## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
PATRICIA PIMENTEL, on behalf of herself )
and all others similarly situated; )
)
         Plaintiff, )
) CIVIL ACTION NO._____
  v. )
)
CITY OF METHUEN; JOSEPH E. SOLOMON, in )
his individual and official capacities; JAMES )
JAJUGA, JR., in his individual capacity; ELVIN )
ALACRON, in his individual capacity; SHAWN )
TARDIF, in his individual capacity; and JOHN and )
JANE DOES, in their individual and official )
capacities, )
)
         Defendants. )
and )
)
JONATHAN W. BLODGETT, DISTRICT )
ATTORNEY FOR ESSEX COUNTY, in his official )
capacity, )
)
         Necessary Party. )
_____)

## CLASS ACTION COMPLAINT AND JURY DEMAND

### Introduction and Summary of Facts

1.      This is a class action brought by Plaintiff Patricia Pimentel, on behalf of herself

and all other persons similarly situated ("Class Members"), seeking class-wide declaratory and

injunctive relief, followed by individual damages trials, for the Defendants' violation of the

Class Members' civil rights, privileges, and immunities secured by the United States

Constitution, the Massachusetts Declaration of Rights, and state and federal law. As described

below, the Methuen Police Department has for years used an erroneous and unlawfully coercive

Spanish language advice of rights form in connection with arrests and prosecutions of Spanish-speaking Hispanic individuals for operating under the influence ("OUI") matters in Methuen.

2.     The Methuen Police Department has used the unlawful Spanish language advice of rights form for years despite having knowledge that the form was erroneous since at least May 2013.  On March 14, 2013, a Spanish-speaking Hispanic OUI defendant filed a motion to suppress his breath test results due to the Methuen Police Department's use of the unlawful Spanish language advice of rights form, which motion the Commonwealth conceded and the Court allowed.  At that time, the Essex County District Attorney's Office took note of the issue and on May 10, 2013 explained that it **would "be working with Methuen PD to rectify" the problem**.  Exhibit 1, Email from L. Nasson to W. Melkonian & E. Graydon re: Methuen PD BT Form (5/10/2013) (emphasis added).  To date, however, the Methuen Police Department has not produced any evidence that it did anything to rectify the situation at that time or at any time since.  There is no evidence that affected defendants or their counsel were notified of the unlawful rights form or their right to challenge its use.  Nor is there any evidence that the Methuen Police Department stopped using the unlawful rights form.

3.     Instead, Methuen continued to present Spanish-speaking Hispanic individuals like Plaintiff Patricia Pimentel with the erroneous and misleading Spanish language advice of rights form, sometimes in conjunction with the confusing presentation of one or more other forms, unlawfully leading them to believe, among other things, that: (i) the jury in a criminal trial will be informed of the individual's refusal to take the breathalyzer; (ii) the legal limit for driving under the influence is a blood alcohol content ("BAC") of 0.10 and there is no "presumption" of impairment under 0.10, despite the "per se" theory of criminal liability for a BAC of 0.08 or

more; (iii) a BAC of 0.05 or less will "liberate" the person from the charge; and (iv) a license suspension for refusing the breathalyzer will last only 120 days, not 180 days or longer.

4.      These erroneous and misleading statements coerce Spanish-speaking Hispanic arrestees presented with the form to sign it and submit to a breathalyzer.  Class Members are falsely presented with what they are led to believe is a Hobson's choice of submitting to the breathalyzer and possibly failing, or refusing the breathalyzer and having the jury learn of the refusal.  The law does not require a defendant to make that choice.  Indeed, the law forbids it.  Compounding that constitutional violation is that the arrestee is led to believe that the legal limit is higher than it really is, that she may be "liberated" or "set free" from the charge with a BAC of 0.05 or less, and that the license suspension she faces is only 120 days.

5.      Taken separately or together, the errors in the Spanish language advice of rights form render it not only erroneous and misleading, but also unconstitutionally and unlawfully coercive.  The form coerces Class Members to submit to the breathalyzer test and vitiates any consent to the test in violation of the United States Constitution, the Massachusetts Declaration of Rights, and the Massachusetts OUI statute and regulations.  *See* M.G.L. c. 90, § 24(e); 501 C.M.R. §§ 2.13(4) & 2.14(1).

6.      In fact, the City of Methuen itself has admitted that the form is "**erroneous.**" Exhibit 2, Letter from R. D'Agostino to H. Cooper re: Response to Public Records Request at 1 (7/14/2017) (emphasis added).[1]

7.      The Essex County District Attorney's Office has likewise described the "**erroneous**" form as "**outdated and incorrect in several respects**" and has acknowledged that use of the form "**may affect the validity of any consent to take the [breath test]**."  Exhibit 3,

---

[1] It is undisputed that while this letter is dated July 14, 2017, it was not transmitted to undersigned counsel until July 25, 2017, after undersigned counsel filed an appeal with the Secretary of the Commonwealth due to Methuen's grossly incomplete and inadequate response to undersigned counsel's public records request.

Letter from D. O'Sullivan to H. Cooper re: Response to Public Records Request at 1-2 (7/3/2017) (emphases added). In recognition of its ethical obligations, the District Attorney's Office has stated in writing that "this Office takes the matter seriously, and will work toward a just and appropriate solution." *Id.* at 2.

8.      Until recently, however, the Methuen Police Department used the unlawfully coercive Spanish advice of rights form without disclosing to the Class Members or their attorneys that the Spanish language form was erroneous and unlawfully coercive, despite having knowledge of this fact since at least May 2013.

9.      As a result of the Methuen Police Department's repeated use of the unlawfully coercive Spanish advice of rights form, Plaintiff Patricia Pimentel and a class of Spanish-speaking Hispanic individuals like her have received the form in connection with their arrests and prosecutions for OUI matters in Methuen.

10.     On information and belief, English-speaking and non-Hispanic individuals have been treated differently than Spanish-speaking Hispanic individuals arrested in Methuen for OUI-related matters insofar as the English-speaking and non-Hispanic individuals have not received unlawfully coercive advice of rights forms.

11.     The Plaintiff Patricia Pimentel, a young Spanish-speaking immigrant from the Dominican Republic, was presented with this erroneous and unlawfully coercive Spanish language advice of rights form after she was arrested on suspicion of operating under the influence in October of 2014. Based on the statements made in the form, Ms. Pimentel believed she had no choice but to sign it and submit to the breathalyzer. On her attorney's advice, Ms. Pimentel ultimately agreed to a plea deal where she admitted to sufficient facts for a guilty finding and the case was continued without a finding. No one explained to Ms. Pimentel the

unlawful nature of the Spanish advice of rights form or the adverse immigration consequences of this plea deal, namely that she would lose her status and employment authorization granted under the United States Department of Homeland Security's Deferred Action for Childhood Arrivals or DACA program.  Only after she was denied renewal under DACA on September 7, 2015, did she hire a new attorney, as a result of which she learned, at some point in or after early December 2015 that her rights had been violated, including that the Spanish advice of rights form was unlawful and that her plea attorney should have informed her of the adverse immigration consequences of her plea arrangement.  Until that time, Ms. Pimentel had no reason to know that she had been harmed or that Defendants' use of the unlawfully coercive Spanish advice of rights form was the cause of that harm.

12.    Ms. Pimentel filed a motion for new trial, which a judge of the District Court allowed, ruling that Ms. Pimentel's plea counsel should have informed her that her status under DACA would be eliminated and that Ms. Pimentel did not voluntarily consent to the breathalyzer because the "**defective rights form**" used by the Methuen Police "**contained incorrect information concerning the length of a license suspension upon a refusal, the alcohol amount needed for no presumption of impairment and presumption of impairment, and the statement that the jury would be informed that the police had a duty to offer the test and that a defendant had the right to refuse the test**."  Exhibit 4, Findings & Ruling re: Def.'s Mot. for New Trial at 4-5 (3/2/2017) (emphasis added).  The District Court judge concluded further that if Ms. Pimentel's breathalyzer results had been suppressed, "**the strength of the government's case would have been diminished greatly**" because "**[c]hallenging the results of field sobriety tests and police officers' observations may lead to a greater chance of**

5

**acquittal than having to deal with a .25 blood alcohol content breathalyzer result**." *Id.* at 5 (emphasis added).

13.    In short, the Defendants in this action have adopted, implemented, enforced, condoned, sanctioned, acquiesced to, and encouraged a policy, pattern, practice, or custom of violating the Class Members' clearly established procedural and substantive due process rights, their right to equal protection of the laws, the prohibitions against discrimination in 42 U.S.C. § 1981 and Title VI of the Civil Rights Act of 1964, and the rights secured by M.G.L. c. 90, § 24, which requires valid consent to a breath test before it is admissible in court, by using the erroneous, misleading, and coercive Spanish language advice of rights form in arrests and prosecutions of Spanish-speaking Hispanic individuals for OUI matters in Methuen.

14.    On information and belief, officials at the City of Methuen and the Methuen Police Department, including but not limited to Methuen Police Chief Joseph E. Solomon, have acted recklessly and with deliberate indifference to the rights of Spanish-speaking Hispanic arrestees in OUI matters in Methuen by: (i) adopting, implementing, enforcing, condoning, sanctioning, acquiescing to, and encouraging a policy, pattern, practice, or custom of using an erroneous and unlawfully coercive Spanish language advice of rights form in connection with arrests and prosecutions of only Spanish-speaking Hispanic individuals for OUI matters in Methuen; (ii) failing to properly train and supervise personnel at the Methuen Police Department; (iii) inadequately monitoring personnel at the Methuen Police Department and their use of the unlawful Spanish language advice of rights form; (iv) failing to discipline its personnel who used the unlawful Spanish language advice of rights form; and (v) encouraging, sanctioning, and failing to rectify the use of the unlawful Spanish language advice of rights form.

15.     Ms. Pimentel and all Class Members will be irreparably harmed, including without limitation by further violations of their constitutional and civil rights, if the Defendants are not enjoined from any further use the unlawfully coercive Spanish advice of rights form.  The Class Members have no plain, adequate, or complete remedy at law to address the constitutional and civil rights violations alleged in this Complaint.

16.     Consequently, Ms. Pimentel seeks to represent a certified class, and on behalf of herself and all others similarly situated, seeks declaratory and injunctive relief, followed by individual damages trials, to remedy the harm done to them.

17.     Ms. Pimentel on behalf of herself and the Class Members seeks to remedy and prevent any further harm caused by the Defendants' unlawful conduct by requesting that the Court: (i) declare that the erroneous Spanish language advice of rights form used by the Methuen Police Department rendered any consent involuntary because the form was inherently coercive and violated the Class Members' clearly established procedural and substantive due process rights, their right to equal protection of the laws, the prohibitions against discrimination in 42 U.S.C. § 1981 and Title VI of the Civil Rights Act of 1964, and the rights secured by M.G.L. c. 90, § 24; (ii) order the City of Methuen to implement a protocol, with assistance from the Essex County District Attorney and to be supervised by a court-appointed special master, under which all affected defendants are identified and adequate notice of what happened and the affected defendants' rights is provided to all affected defendants forthwith so that those defendants have an opportunity to move to vacate their plea or for a new trial (*see, e.g.*, *Bridgeman v. District Attorney for Suffolk District*, 476 Mass. 298, 300-301, 326-332 (2017)); (iii) enjoin the Defendants from any further use of the unconstitutionally coercive Spanish advice of rights form; (iv) order the City of Methuen to institute and implement improved policies and programs

for training and supervising its personnel concerning the constitutional and statutory rights of

individuals arrested for operating under the influence; and (v) award to each Class Member, after

individual damages trials to be conducted after notice is provided to the Class Members and they

are given an opportunity to challenge their convictions, all damages in an amount, to be

determined at trial, which is sufficient to compensate each Class Member for his or her injuries.

## Parties

18.    Plaintiff Patricia Pimentel is a Spanish-speaking Hispanic individual residing in

Lawrence, Massachusetts.  She was arrested on suspicion of operating under the influence in

Methuen, Massachusetts on October 21, 2014 and was presented with the unlawfully coercive

Spanish language advice of rights form in use in the Methuen Police Department.

19.    Ms. Pimentel brings this action on her own behalf and on behalf of all others

similarly situated, namely Spanish-speaking Hispanic individuals who received the erroneous

and unlawfully coercive Spanish advice of rights form in connection with arrests and

prosecutions for OUI matters in Methuen.

20.    Defendant City of Methuen is a municipal body public duly incorporated under

the laws of the Commonwealth of Massachusetts.  The City of Methuen operates the Methuen

Police Department, located at 90 Hampshire Street, Methuen, Massachusetts.  On information

and belief, the City of Methuen receives financial assistance through federal grants and other

contributions from the Department of Justice ("DOJ") and other federal agencies.  As a recipient

of federal financial assistance, the City of Methuen is legally required to provide and conduct its

activities in a racially and ethnically non-discriminatory manner.

21.    Defendant Joseph E. Solomon is the Chief of Police of the Methuen Police

Department with his principal place of business at 90 Hampshire Street, Methuen,

8

Massachusetts.  Chief Solomon is sued in his individual and official capacities.  On information

and belief, the Chief of Police is the policy maker for the Methuen Police Department, and is

responsible for setting and implementing the policies and practices of the Methuen Police

Department, including but not limited to creating and regulating department policies for

informing individuals arrested for OUI related matters of their constitutional and statutory rights

in connection with refusing or submitting to a breathalyzer.  Chief Solomon is and was at all

relevant times responsible for the hiring, training, retention, supervision, discipline, counseling,

and control of the personnel of the Methuen Police Department.

      22.     Defendant Lieutenant James Jajuga, Jr. is a Police Officer in the Methuen Police

Department with his principal place of business at 90 Hampshire Street, Methuen,

Massachusetts.  Lieutenant Jajuga was the booking officer and breath test operator when Ms.

Pimentel was arrested on October 21, 2014.  Documents from Ms. Pimentel's arrest, including

documents produced by the Methuen Police Department and Essex County District Attorney's

Office in response to a public records request, indicate and allow Plaintiff to allege in good faith

that Lieutenant Jajuga was likely present and involved when Ms. Pimentel was asked to and did

sign the unlawfully coercive Spanish advice of rights form.  Lieutenant Jajuga is sued in his

individual capacity.

      23.     Defendant Elvin Alacron is a Police Officer in the Methuen Police Department

with his principal place of business at 90 Hampshire Street, Methuen, Massachusetts.  Officer

Alacron was a responding and arresting officer when Ms. Pimentel was arrested on October 21,

2014.  Documents from Ms. Pimentel's arrest, including documents produced by the Methuen

Police Department and Essex County District Attorney's Office in response to a public records

request, indicate and allow Plaintiff to allege in good faith that Officer Alacron was likely

present and involved when Ms. Pimentel was asked to and did sign the unlawfully coercive

Spanish advice of rights form.  Officer Alacron is sued in his individual capacity.

24.    Defendant Shawn Tardif is a Police Officer in the Methuen Police Department

with his principal place of business at 90 Hampshire Street, Methuen, Massachusetts.  Officer

Tardif was a responding and arresting officer when Ms. Pimentel was arrested on October 21,

2014.  Documents from Ms. Pimentel's arrest, including documents produced by the Methuen

Police Department and Essex County District Attorney's Office in response to a public records

request, indicate and allow Plaintiff to allege in good faith that Officer Tardif was likely present

and involved when Ms. Pimentel was asked to and did sign the unlawfully coercive Spanish

advice of rights form.  Officer Tardif is sued in his individual capacity.

25.    Defendants John and Jane Does are Police Officers in the Methuen Police

Department with their principal place of business at 90 Hampshire Street, Methuen,

Massachusetts (collectively, the "Doe Defendants").  The Doe Defendants are Methuen Police

Officers who were involved in the creation, approval, or use of the unlawfully coercive Spanish

advice of rights form, including in connection with the arrest and prosecution of Plaintiff Ms.

Pimentel.  The Doe Defendants are sued in their individual and, as appropriate, official

capacities.  The total number and identities of the Doe Defendants is currently unknown to Ms.

Pimentel, who therefore sues these individuals using fictitious names.  Ms. Pimentel will seek

leave to amend the Complaint to state the true names of the Doe Defendants when she ascertains

their identities.  Ms. Pimentel will serve each Doe Defendant with process at that time.

26.    Necessary Party Jonathan W. Blodgett is the District Attorney for Essex County

with his principal place of business at 10 Federal Street, Salem, Massachusetts.  District Attorney

Blodgett is joined in his official capacity as a necessary party under Fed. Civ. P. 19 solely to

afford complete relief to the Class Members, including identifying and providing notice to all the Class Members.  The term "Defendants" used throughout this Complaint specifically excludes District Attorney Blodgett, who is joined only as a necessary party.

27.    At all relevant times, the Defendants have acted under color of state law in the course and scope of their duties and functions as agents, employees, and officers of the City of Methuen and/or the Methuen Police Department in engaging in the conduct described in this Complaint.  At all relevant times, the Defendants have acted for and on behalf of the City of Methuen and/or the Methuen Police Department with the power and authority vested in them as officers, agents, and employees of the City of Methuen and/or the Methuen Police Department and incidental to the lawful pursuit of their duties as officers, employees, and agents of the City of Methuen and/or the Methuen Police Department.

28.    At all relevant times, the Defendants Methuen Police Chief Joseph E. Solomon, Methuen Police Officers Shawn Tardif, Elvin Alacron, James Jajuga, and John and Jane Does, each violated clearly established law of which a reasonable person would have known, including the Class Members' procedural and substantive due process rights, their right to equal protection of the laws, the prohibitions against discrimination in 42 U.S.C. § 1981 and Title VI of the Civil Rights Act of 1964, and the rights secured by M.G.L. c. 90, § 24, which requires valid consent to a breath test before it is admissible in court.

## Jurisdiction and Venue

29.    This Court has subject matter jurisdiction over Plaintiff's federal and state law claims under 28 U.S.C. §§ 1331, 1343, and 1367.

30.    Plaintiff on behalf of herself and all others similarly situated is entitled to declaratory and other relief deemed necessary and proper under 28 U.S.C. §§ 2201 and 2202.

31.     This Court has personal jurisdiction over all defendants because each Defendant is domiciled in, organized under the laws of, or maintains his or its principal place of business in this District, and because Plaintiff's claims arise from Defendants' tortious and unlawful conduct causing personal injury in this District. *See* M.G.L. c. 223A, §§ 2 and 3.

32.     Venue is proper in this District under 28 U.S.C. § 1391(b) and (c), because a substantial part of the events or omissions giving rise to the claims occurred in this District and because Defendants are subject to personal jurisdiction in this District.

### The Methuen Police Department Uses an Unlawfully Coercive Spanish Language Advice of Rights Form in OUI Arrests and Prosecutions of Spanish-Speaking Hispanic Individuals

33.     On information and belief, the Methuen Police Department has for years used an unlawfully coercive Spanish advice of rights form in connection with arrests and prosecutions for OUI matters in Methuen.  *See* Exhibit 5, Methuen Police Dept. Booking Report at 4; *see also* Exhibit 6, Translation of Breathalyzer Advice of Rights Form.

34.     The unlawful Spanish advice of rights form contains a litany of errors and outdated information, some of which has not been the law in the Commonwealth of Massachusetts since ***1992***.  While it is unclear when the Methuen Police Department began using the unlawful Spanish advice of rights form, it has been in use since at least 2012 and, on information and belief, for up to two decades before that.

35.     The unlawful Spanish advice of rights form contains the following erroneous and outdated information.

36.     *First*, the Spanish advice of rights form erroneously and unlawfully informs arrestees that refusal to submit to a breathalyzer will result in a jury instruction informing the jury that the police must offer the breath test to the driver, but the driver has the right to refuse to

take the test.  Exhibit 5, Methuen Police Dept. Booking Report at 4 ¶ 3; *see also* Exhibit 6, Translation of Breathalyzer Advice of Rights Form ¶ 3.

37.    That is plainly wrong.  In 1992 the Supreme Judicial Court of Massachusetts held in no uncertain terms that informing a jury that a defendant refused a breathalyzer would violate the privilege against self-incrimination secured by Article 12 of the Massachusetts Declaration of Rights.  *See Opinion of the Justices to the Senate*, 412 Mass. 1201, 1211 (1992) ("refusal evidence" is unconstitutional because it "is both compelled and furnishes evidence against oneself").  The applicable criminal statute itself provides that "[e]vidence that the defendant failed or refused to consent to such test or analysis **shall not be admissible against him in a . . . criminal proceeding**."  M.G.L. c. 90, § 24(1)(e) (emphasis added).  The statement in the Spanish language form that the jury will learn of the defendant's refusal is contrary to longstanding and clearly established law concerning the right against self-incrimination about which a reasonable person would have known.

38.    *Second*, the Spanish advice of rights form erroneously and unlawfully informs arrestees that if the test results from the breathalyzer show a BAC of 0.10 or more, "it is **presumed** that you are driving under the influence of intoxicating liquor, and this proof can be used as evidence against you in court" and "the court will suspend your license for a period of time up to 90 days."  Exhibit 5, Methuen Police Dept. Booking Report at 4 ¶ 7; *see also* Exhibit 6, Translation of Breathalyzer Advice of Rights Form ¶ 7 (emphasis added).

39.    This statement is also wrong in several ways.  The BAC that the Commonwealth must prove for an OUI conviction under the so-called "per se" theory of liability (or that may serve as evidence of consumption of alcohol under the "operating under the influence" theory) is **0.08—*not* 0.10**.  Indeed, it has not been 0.10 since *1994*.  *See* St. 1994, c. 25, §§ 3 to 6.  What is

more, this statement contains no information about the "per se" theory of liability, which has been in effect since June 30, 2003 (St.2003, c. 28, §§1 to 7, eff. June 30, 2003), and under which the Commonwealth can convict a defendant for OUI by proving that she drove with a BAC over 0.08 without having to prove any impairment. Additionally, the statement erroneously implies that a conclusive or mandatory evidentiary presumption is permissible in a criminal case. However, the United States Constitution and the Massachusetts Declaration of Rights forbid any presumptions that have the effect of shifting the burden of proof to the defendant in a criminal case. Finally, the length of the suspension for registering a BAC of 0.08 or higher is not more than 30 days. M.G.L. c. 90, § 24(1)(f)(2). This warning in the Spanish language form is contrary to longstanding and clearly established law about which a reasonable person would have known.

40.     *Third*, the Spanish advice of rights form erroneously and unlawfully informs arrestees that if the test results from the breathalyzer show a BAC of more than 0.05 but less than 0.10 there would be "no presumption that you are driving under the influence of an intoxicating liquor." Exhibit 5, Methuen Police Dept. Booking Report at 4 ¶ 6; *see also* Exhibit 6, Translation of Breathalyzer Advice of Rights Form ¶ 6 (emphasis added).

41.     This statement is also wrong and misleading in several ways. First, as explained above, the BAC that the Commonwealth must prove for an OUI conviction under the so-called "per se" theory of liability (or that may be used as evidence of consumption of alcohol under the "operating under the influence" theory) has been **0.08, _not_ 0.10**, since 1994. The correct statement would be that if the driver's BAC "was more than [0.05] but less than [0.08] there shall be no permissible inference" as to whether the driver was under the influence of alcohol. This statement contains no information about the "per se" theory of criminal liability at a BAC of

14

0.08.  Finally, like the statement above, it also erroneously implies that a conclusive or

mandatory evidentiary presumption is permissible in a criminal case.  Such a burden-shifting

presumption would be unconstitutional in a criminal case.  This warning in the Spanish language

form is contrary to longstanding and clearly established law about which a reasonable person

would have known.

42.      *Fourth,* the Spanish advice of rights form erroneously and unlawfully informs

arrestees that if the test results from the breathalyzer show a BAC of 0.05 or less the arrestee will

be "liberated" or "set free" from the charge.

43.      That is also clearly inaccurate.  The Commonwealth can still prosecute using

other evidence of impairment, though if the BAC is 0.05 or less "there shall be a permissible

inference that such defendant was not under the influence of intoxicating liquor, and he shall be

released from custody forthwith."  M.G.L. c. 90, § 24(1)(e).  Moreover, this instruction includes

no information specific to drivers under the age of twenty-one.  Indeed, the Spanish advice of

rights form contains no information anywhere about the particular consequences of submitting or

refusing to submit to a breathalyzer for persons under age twenty-one.  Drivers under age

twenty-one with a BAC of 0.02 or more are subject to immediate suspension of their license for

up to 30 days and a further suspension for 180 days up to one year.  *See* M.G.L. c. 90, §

24(1)(f)(1); M.G.L. c. 90, § 24P(a).  This warning in the Spanish language form is contrary to

longstanding and clearly established law about which a reasonable person would have known.

44.      *Fifth*, the Spanish advice of rights form erroneously and unlawfully informs

arrestees that refusal to submit to a breathalyzer will cause a 120-day suspension of that person's

driver's license.  The advice of rights form makes no distinction between the consequences for

drivers who are twenty-one and over and drivers who are under twenty-one.

15

45.    The advice of rights form should inform arrestees that for drivers aged twenty-one and over, refusal to submit to a breathalyzer results in a mandatory 180-day suspension (and up to a lifetime loss) of the person's driver's license.  *See* M.G.L. c. 90, § 24(1)(f)(1).  The advice of rights form should also inform arrestees that for drivers under the age of twenty-one, refusal to submit to a breathalyzer results in a mandatory three-year suspension (and up to a lifetime loss) of the person's driver's license, plus an additional suspension of 180 days up to one year.  *See* M.G.L. c. 90, § 24(1)(f)(1); M.G.L. c. 90, § 24P(a).

46.    In short, Spanish-speaking Hispanic arrestees presented with this erroneous and misleading Spanish language advice of rights form are left thinking that: (i) the jury in a criminal trial will be informed of the individual's refusal to take the breathalyzer; (ii) the legal limit for driving under the influence is a BAC of 0.10 and there is no "presumption" of impairment under 0.10, despite the "per se" theory of criminal liability for a BAC of 0.08 or more; (iii) a BAC of 0.05 or less will "liberate" the person from the charge; and (iv) a license suspension for refusing the breathalyzer will last only 120 days, not 180 days or longer.

47.    Whether taken separately or together, these erroneous and misleading statements coerce Spanish-speaking Hispanic arrestees presented with the Spanish language advice of rights form to sign it and to submit to a breathalyzer.

48.    The coercive nature of the Spanish advice of rights form vitiates any consent to the breath test in violation of the United States Constitution, the Massachusetts Declaration of Rights, and the Massachusetts OUI statute and regulations.  *See* M.G.L. c. 90, § 24(e) (requiring defendant's consent as prerequisite to admissibility of breathalyzer results); 501 C.M.R. §§ 2.13(4) & 2.14(1) (requiring arresting officer or breath test operator to document arrestee's consent to breath test).

16

49.    Moreover, even if Class Members were also presented with a Spanish advice of rights form that correctly informed them of their rights in connection with the breathalyzer test, that would not cure the unlawful and involuntary nature of the consent secured by providing the Class Members with the erroneous, misleading, and unlawfully coercive Spanish language advice of rights form.  Indeed, the use of the correct form in conjunction with the unlawful form only makes matters worse, by creating confusion for the person arrested.

**The Methuen Police Department Was Aware Since At Least May 2013 that the Spanish Language Advice of Rights Form Was Unlawful But Did Not Disclose This Fact to Class Members and Continued to Use It In Arrests and Prosecutions of Spanish-Speaking Hispanic Individuals in OUI Matters Until At Least 2016**

50.    In 2013, a Spanish-speaking Hispanic OUI defendant arrested in Methuen and presented with the unlawful and erroneous Spanish language advice of rights form successfully moved to suppress the breathalyzer test results (showing a BAC of 0.148) taken after his arrest on August 12, 2012.  The motion to suppress in that case was filed on March 14, 2013.

51.    On May 9, 2013, the Commonwealth correctly conceded the motion to suppress and the defendant was ultimately acquitted at trial.  *See Commonwealth v. Morillo*, Lawrence Dist. Ct. No. 1218CR3791.

52.    The following day, Assistant District Attorney Lindsay M. Nasson sent an email to her superiors, William Melkonian and Elin Graydon (among others), informing them that she "felt [she] had no choice but to concede the motion to exclude the [breath test] results."  Exhibit 1, Email from L. Nasson to W. Melkonian & E. Graydon re: Methuen PD BT Form (5/10/2013).

53. Assistant District Attorney Nasson explained to her superiors:

[T]he form tells the [defendant] that a [breath test] refusal cannot be used against him in court, but there will be a jury instruction that the police officer has the right to offer it, and the [defendant] has the right to refuse it.  **Obviously that is not true.**  It also tells the [defendant] that the per se level is .10, **which is obviously not true either**.

17

*Id*. (emphases added).

54. Assistant District Attorney Nasson continued:

> We don't know what effect this form has had on other cases, however, and whether we are going to be seeing a wave of motions for new trial once word of this gets out. **I just wanted to put everyone on notice that this is a live issue, and something that we will be working with Methuen PD to rectify.** [Assistant District Attorney Kimberly Gillespie] has suggested providing them with the form used by the State Police, but it's something we can all discuss.

*Id*. (emphases added).

55.     To date, however, the Methuen Police Department has not produced any evidence that it did anything to rectify the situation at that time.  There is no evidence that defendants or their counsel were notified of the unlawful rights form or their right to challenge its use.  Nor is there any evidence that the Methuen Police Department stopped using the unlawful rights form.

56.     In fact, the evidence is exactly the opposite.  For example, as alleged in detail below, Plaintiff Patricia Pimentel was presented with the unlawfully coercive Spanish rights form on October 21, 2014—nearly 18 months later.

57.     What is more, the Methuen Police Department appears to have continued to use the unlawfully coercive Spanish advice of rights form at least into November of 2016—nearly four months after Ms. Pimentel put the Essex County District Attorney's Office and the Methuen Police Department on notice *again* by filing a motion for new trial in July 2016.

58.     On November 4, 2016, Assistant District Attorney Brett Sabbag wrote to Methuen Police Lieutenant Frank Korn by email explaining that "[t]he statutory rights and consent forms in Spanish are incorrect as to the implied consent law and the BAC for the per se theory." Exhibit 7, Emails from B. Sabbag to F. Korn re: Spanish Statutory Rights and Consent Form with attachments (11/4/2016 - 11/7/2016).  Assistant District Attorney Sabbag attached two

copies of the "incorrect form, one of which is from August 2016." *Id*. He also attached the "correct copy of the form that should be used." *Id*.

59.     Lieutenant Korn responded by asking if it was correct that "the first 4 pages that you sent are the wrong Spanish consent forms and the last two pages are the correct Spanish consent forms." *Id*. Assistant District Attorney Sabbag responded in the affirmative.

60.     Incredibly, Lieutenant Korn's email shows that even high-ranking police officers in the Methuen Police Department were completely unaware that they were using an unlawfully coercive Spanish advice of rights form ***as recently as November of 2016***.

61.     This is true even though the unlawfully coercive form includes an outdated BAC of ".10" with no mention of the correct legal limit of 0.08. Even non-Spanish speaking Methuen Police Officers should have picked up on that glaringly obvious error and investigated it further.

62.     Further investigation would have been easy because, on information and belief, the Methuen Police Department had Spanish-speaking police officers on its force who presumably could have translated the unlawfully coercive form for non-Spanish speaking officers.

63.     However, on information and belief, the Methuen Police Department did none of those things until at least November of 2016.

64.     To its credit, the City of Methuen has recently admitted to "the use of an **erroneous** Spanish language form previously used by the Methuen Police Department in connection with [OUI] cases." Exhibit 2, Letter from R. D'Agostino to H. Cooper re: Response to Public Records Request at 1 (7/14/2017) (emphasis added).

65.     Similarly, the Essex County District Attorney's Office has recently recognized that the Spanish language form is "**erroneous**" and that "[t]he advice given on the form is

**outdated and incorrect in several respects** as regards current OUI law and the consequences of taking or refusing a [breath test]."  Exhibit 3, Letter from D. O'Sullivan to H. Cooper re: Response to Public Records Request at 1 (7/3/2017) (emphases added).  The District Attorney's Office also acknowledged that the use of the admittedly "erroneous" form "**may affect the validity of any consent to take the [breath test]**" because "[t]he Commonwealth generally must prove valid consent prior to admitting such test results in evidence."  *Id.* at 1-2 (emphasis added).  The District Attorney's Office has also pointed to the ethical obligations imposed on prosecutors and stated in writing that "this Office takes the matter seriously, and will work toward a just and appropriate solution."  *Id.* at 2.

66.    While Ms. Pimentel takes the District Attorney's Office at its word, she cannot sit idly by and wait for a potential resolution after her constitutional and statutory rights, and those of all of her fellow Class Members, were so clearly violated by the City of Methuen and its police officers.

67.    This is particularly true given the City's grossly inadequate response to undersigned counsel's public records request.  On June 8, 2017, undersigned counsel presented a Public Records Request to the Methuen Police Department, pursuant to M.G.L. c. 66, §§ 1 et seq.  Exhibit 8, Letter from H. Cooper to Methuen P.D. (6/8/2017).  The Methuen Police Department provided no response to undersigned counsel's request within the statutory 10-day compliance period. G. L. c. 66, § 10(a-b); 950 CMR 32.06(2)(a).  Thereafter, undersigned counsel left voice messages for Methuen City Solicitor Richard D'Agostino on June 23, 2017 and June 27, 2017.  Attorney D'Agostino did not respond to the first message, but did respond by telephone on June 27, 2017, at which time undersigned counsel agreed to extend the deadline for a response to June 30, 2017.

68.     On June 30, 2017 Attorney D'Agostino provided only a handful of advice of rights and consent forms and requested a further extension.  Undersigned counsel agreed to Attorney D'Agostino's requested extension given his representation that he "expect[ed] to be in a position to forward further, requested information" on July 5, 2017.  The City provided no further records at that time, despite undersigned counsel's repeated efforts to follow up with Attorney D'Agostino.

69.     Therefore, undersigned counsel filed an appeal with the Secretary of the Commonwealth on July 24, 2017.  The very next day, on July 25, 2017, the City responded by email claiming that it had no additional records to produce and attaching a letter dated July 14, 2017 which the City had not sent out until July 25.  Undersigned counsel wrote again to Attorney D'Agostino explaining that the document production to date was grossly inadequate and demanding that the City either complete its search and production of documents or represent to the Secretary of the Commonwealth that the City searched for and did not find any responsive documents.  Attorney D'Agostino wrote back explaining that the City's search was ongoing.

70.     During a subsequent conversation with undersigned counsel, Attorney D'Agostino stated that a Methuen Police Captain informed him that the total number of OUI arrests at the Methuen Police Department was about 10 per year.  Undersigned counsel then emailed Attorney D'Agostino, informing him that the records produced by the Essex County District Attorney's Office in response to a public records request demonstrate without doubt that the 10-per-year figure is inaccurate.  The records produced by the Essex County District Attorney show that the total number of OUI cases from the Methuen Police Department that included a charge of OUI under M.G.L. c. 90, § 24 since January 1, 2004 was **over 860**.  That

means the Methuen Police Department averaged **over 66** OUI arrests annually that resulted in

charges under M.G.L. c. 90, § 24.

71.    Due to the City's "partial responses" followed by "no subsequent response" to

undersigned counsel's public records request, on August 2, 2017, the Secretary of the

Commonwealth's Office issued an order to the City of Methuen that it comply with the public

records law and respond fully to undersigned counsel's public records request within 10 business

days.  Exhibit 9, Letter from R. Murray to Cptn. G. Gallant re: Appeal of Response to Public

Records Request (8/2/2017).

72.    Having received nothing after 10 business days, undersigned counsel wrote to the

Secretary of the Commonwealth informing the Office of the City's continued violation of its

obligations under the public records law.  That prompted a response the next day, on August 17,

2017, in which the City produced incomplete arrest records for 32 individuals.  Notably, Plaintiff

Patricia Pimentel was not included among the individuals whose arrest records were produced,

which raised obvious questions about the completeness of the City's document production.

73.    On August 21, 2017, undersigned counsel wrote to Attorney D'Agostino to

explain the remaining deficiencies with the City's document production.  Undersigned counsel

pointed out that Ms. Pimentel's records were missing.  Undersigned counsel also pointed out that

the Essex County District Attorney's public records disclosure identified a total of over 860

Methuen OUI arrests from 2004-2017.  So one would expect to see more than just 32 cases from

2010-2017 that involved a Spanish language form, even recognizing that the 860 total goes back

to 2004 and includes all OUIs, not just arrests where a Spanish language form was used.

Undersigned counsel also pointed out several requests for which no responsive documents had

been produced by the City of Methuen.  This included a request for communications between the

22

Methuen Police Department and the Essex County District Attorney's Office concerning the unlawful Spanish advice of rights form. The District Attorney's Office had already produced email communications with the Methuen Police Department on that topic. Therefore, it was indisputable that Methuen had failed to produce documents that it should have in its possession, custody, or control.

74.    On August 31, 2017, Attorney D'Agostino produced records from Ms. Pimentel's arrest. On September 5, 2017, undersigned counsel wrote to Attorney D'Agostino by email asking when the City would be in a position to respond to all of the specific follow-up questions outlined on August 21. The City of Methuen has yet to respond any further.

75.    Given the seriousness of the civil rights violations at stake, the City of Methuen's lackadaisical approach to its obligations under the public records law is inappropriate. It is for this reason that Ms. Pimentel requests that the Court appoint a special master to oversee the City's identification and notification of Class Members.

**Officials at the Methuen Police Department Recklessly and With Deliberate Indifference to the Rights of Spanish-Speaking Hispanic Arrestees Failed to Properly Train, Monitor, Supervise, and Discipline Their Personnel About the Use of the Spanish Advice of Rights Form, and Failed to Prevent Its Further Use**

76.    On information and belief, officials at the City of Methuen and the Methuen Police Department, including but not limited to Chief Solomon, have acted recklessly and with deliberate indifference to the rights of Spanish-speaking Hispanic arrestees in OUI matters in Methuen by: (i) adopting, implementing, enforcing, condoning, sanctioning, acquiescing to, and encouraging a policy, pattern, practice, or custom of using an erroneous and unlawfully coercive Spanish language advice of rights form in connection with arrests and prosecutions of only Spanish-speaking Hispanic individuals for OUI matters in Methuen; (ii) failing to properly train and supervise personnel at the Methuen Police Department; (iii) inadequately monitoring

personnel at the Methuen Police Department and their use of the unlawful Spanish language advice of rights form; (iv) failing to discipline its personnel who used the unlawful Spanish language advice of rights form; and (v) encouraging, sanctioning, and failing to rectify the use of the unlawful Spanish language advice of rights form.

77.    The Methuen Police Department failed to train, supervise, monitor, or discipline their personnel adequately and to promulgate appropriate policies and procedures to prevent the use of the unlawfully coercive Spanish language advice of rights form in the arrests and prosecutions of Ms. Pimentel and the Class Members for OUI-related matters.

78.    The Methuen Police Department's failure to take these actions and its failure to rectify the situation demonstrates its deliberate indifference to the violation of Ms. Pimentel's and the Class Members constitutional rights.

79.    On information and belief, these failures directly led to the repeated use of the unlawfully coercive Spanish language advice of rights form in arrests and prosecutions in Methuen, including the arrest and prosecution of Patricia Pimentel.

## Patricia Pimentel's Individual Allegations

### *Patricia Pimentel's Background*

80.    Patricia Pimentel was born in the Dominican Republic on February 27, 1994.  Her mother, a long-suffering survivor of familial and spousal abuse, fled the Dominican Republic to the United States in 2000, when Ms. Pimentel was only six years old.  Ms. Pimentel's maternal great-aunt, whom Ms. Pimentel viewed as her grandmother, cared for Ms. Pimentel after her mother left for the United States.  Ms. Pimentel's father left the Dominican Republic for the United States in 2003.

81.     In 2003, when Ms. Pimentel was only nine years old, her parents paid a so-called "coyote," or smuggler, to bring her to the United States.  They did the same with Ms. Pimentel's brother that year and her sister in 2004.  Ms. Pimentel and her family have struggled to survive in the United States ever since.

82.     Like the countless immigrants that have come to the United States before and after them, Ms. Pimentel's parents came here to seek opportunities not available to them or their children in the Dominican Republic.  Chief among them were the educational opportunities available in the United States.

83.     Ms. Pimentel flourished in the United States, despite the hardships of being a child without legal status in a new country that was foreign to her.  Ms. Pimentel grew up as any American child would.  She attended South Lawrence East Elementary School, South Lawrence East Middle School, and Lawrence High School.  Ms. Pimentel graduated from high school with honors in 2013.

84.     After graduating from high school with honors in 2013, Ms. Pimentel hoped to enroll in college and study criminal justice.  However, Ms. Pimentel's immigration status precluded her from obtaining student loans or financial aid.

***Patricia Pimentel Is Granted Deferred Action for Childhood Arrivals and Work Authorization***

85.     On June 15, 2012, the United States Secretary of Homeland Security announced that certain people who came to the United States as children and who met several guidelines could request consideration of deferred action for a period of two years, subject to renewal. They would also be eligible for work authorization.  Deferred action is a use of prosecutorial discretion to defer removal action against an individual for a certain period of time.  Deferred action does not provide lawful status.  This program is referred to as Deferred Action for

Childhood Arrivals or DACA.  *See* U.S. Department of Homeland Security Website, Deferred

Action for Childhood Arrivals, https://www.dhs.gov/topic/deferred-action-childhood-arrivals-

daca (last visited October 5, 2017).

86.    DACA required, among other things, that an individual not have been convicted

of a felony, significant misdemeanor, or three or more other misdemeanors, and to not otherwise

pose a threat to national security or public safety.  *See* U.S. Dep't of Homeland Security Website,

Consideration of Deferred Action for Childhood Arrivals,

https://www.uscis.gov/humanitarian/consideration-deferred-action-childhood-arrivals-

daca#guidelines (last visited October 5, 2017).

87.    DACA presented an opportunity for Ms. Pimentel to obtain employment

authorization and employment, which would enable her to save money to attend college and

pursue her dream of a career in criminal justice.

88.    On May 14, 2013, Ms. Pimentel applied for consideration under DACA.  The

Department of Homeland Security granted her application and issued an employment

authorization card and social security number.

89.    Ms. Pimentel promptly obtained work in the packaging department at JMB

Industries in Hudson, New Hampshire.  She began saving to continue her education.

90.    Ms. Pimentel then began to suffer a series of hardships and setbacks.  An

emotionally and physically abusive former boyfriend resurfaced.  Ms. Pimentel became

pregnant, but then lost the child due to an ectopic pregnancy.  Ms. Pimentel's great-aunt, who

she knew as her grandmother and who cared for Ms. Pimentel when her mother left the

Dominican Republic to come to the United States, passed away.

*Patricia Pimentel's Arrest on October 21, 2014*

91.     Ms. Pimentel understandably struggled with these mounting hardships, seeking
solace in the company of two of her closest friends.  On the night of October 21, 2014, Ms.
Pimentel and these two friends gathered at one of their homes to watch movies.  Ms. Pimentel,
though under twenty-one years of age at the time, drank alcohol with her friends that night.

92.     Unaccustomed to the effects of alcohol, Ms. Pimentel, who had driven herself to
her friend's house, became ill and called a taxi cab to take her home.  Ms. Pimentel planned to
leave her car at her friend's house and pick it up the next day.  Ms. Pimentel's other friend,
however, volunteered to take Ms. Pimentel home in Ms. Pimentel's car, telling Ms. Pimentel that
she was fine to drive.  Ms. Pimentel agreed.

93.     Ms. Pimentel's friend got into an argument with her husband on the telephone as
she drove Ms. Pimentel's car.  Ms. Pimentel's friend drove to her own home rather than
dropping Ms. Pimentel off at her house.  When they arrived at the friend's home, Ms. Pimentel's
friend parked the car in her driveway and went into the house to speak to her husband.

94.     Meanwhile, Ms. Pimentel waited in the car.  Within moments, Ms. Pimentel saw
her abusive former boyfriend sitting in a car nearby.  Ms. Pimentel became nervous.  She was
unaware of any connection between her ex-boyfriend and her friend or her husband.  So Ms.
Pimentel feared that her ex-boyfriend had followed her there.

95.     Ms. Pimentel's cellular telephone rang.  The caller identification showed her ex-
boyfriend's telephone number.  She became even more fearful.

96.     Ms. Pimentel answered the telephone and began to argue with her ex-boyfriend
over the telephone.  Ms. Pimentel told him to stop following her and to stop calling her.  He told
Ms. Pimentel that he was going to "fuck [her] up."  He got out of his car and started walking

towards Ms. Pimentel's car. He reached the driver's side and began trying to open the door. Ms. Pimentel was in a panic. She moved into the driver's seat and began to drive away.

97.     As Ms. Pimentel hurried out of her friend's driveway, she hit two parked vehicles. Ms. Pimentel's ex-boyfriend followed in his car, quickly speeding past her and then blocking her at a stop sign. Again, he exited his car and approached Ms. Pimentel's car. He gained entry and hit Ms. Pimentel in the face.

98.     Fortunately, the sound of approaching sirens frightened Ms. Pimentel's ex-boyfriend and he fled the scene, leaving the battered Ms. Pimentel alone in her car. Ms. Pimentel called her friend for help.

99.     Soon after that Methuen Police Officers Shawn Tardiff and David Souther were dispatched to the area. *See* Exhibit 10, Police Report. When Officer Tardiff arrived he approached Ms. Pimentel's vehicle and asked her for her license and registration. He then asked her to exit the vehicle and proceeded to question Ms. Pimentel. Shortly after that, a Spanish-speaking Methuen Police Officer, Elvin Alacron, arrived at the scene. Though Ms. Pimentel had lived in the United States for several years, Spanish is her first and primary language and she did not (and still does not) feel comfortable having substantive conversations in English without a Spanish interpreter present.

100.    Ms. Pimentel tried to explain to Officer Tardiff and Officer Alacron what had happened, but they did not seem interested. Instead, Officers Tardiff and Alacron asked Ms. Pimentel to perform certain field sobriety tests, after which they placed Ms. Pimentel under arrest and transported her in Officer Tardiff's cruiser to the Methuen police station for booking.

***The Methuen Police Department Presents Patricia Pimentel With the Unlawfully Coercive
Spanish Language Advice of Rights Form and Performs a Breath Test Without Validly
Obtaining Ms. Pimentel's Consent***

101.    At the Methuen police station, Officer Alacron and Lieutenant James Jajuga

conducted a 15-minute observation of Ms. Pimentel, according to Officer Tardiff's police report.

Exhibit 10, Police Report at 3.  According to Officer Tardiff's police report, Lieutenant Jajuga,

who was the booking officer and breath test operator, completed the booking process.  *Id.*

102.    Ms. Pimentel was then asked to sign the erroneous and unlawfully coercive

Spanish language advice of rights form described above.  *See* Exhibit 5, Methuen Police Dept.

Booking Report at 4; *see also* Exhibit 6, Translation of Breathalyzer Advice of Rights Form.

103.    After reviewing the inaccurate, misleading, and coercive Spanish language advice

of rights form, Ms. Pimentel signed the form and submitted to breathalyzer testing because,

among other things, she believed that it would be harmful for the jury to be told that she had

refused to take the test and she believed that she would not be over what she thought was the

legal limit of 0.10.  Submitting to the breathalyzer test seemed to be the only option to Ms.

Pimentel.

104.    However, the Methuen Police did not validly obtain Ms. Pimentel's consent,

because the Spanish advice of rights form was unlawfully coercive and violated the United States

Constitution, the Massachusetts Declaration of Rights, and state and federal law.  *See, e.g.*,

M.G.L. c. 90, § 24(e); 501 C.M.R. §§ 2.13(4) & 2.14(1).

105.    Ms. Pimentel was also given and signed a Statutory Rights and Consent Form in

both Spanish and English, which correctly informed her of her rights in connection with the

breathalyzer test.  *See* Exhibit 11, Statutory Rights and Consent Form – Spanish.  However, Ms.

Pimentel was presented with the unlawfully coercive Spanish advice of rights form first.  The

time stamp on the unlawfully coercive advice of rights form is 2:11 a.m. and the time stamp on

the correct rights form is 2:15 a.m.  *Compare* Exhibit 5, Methuen Police Dept. Booking Report at

4, *with* Exhibit 11, Statutory Rights and Consent Form – Spanish.   Providing Ms. Pimentel with

the correct form *after* providing her with the erroneous form did not cure the unlawful and

involuntary nature of her consent, which was secured only after providing her with the

unlawfully coercive Spanish language advice of rights form.  Moreover, regardless of the

sequence in which the forms were presented, the Methuen Police Department's use of the

unlawfully coercive Spanish language form vitiates any consent that might otherwise have been

obtained through the use of the correct form only.  Indeed, the use of the correct form in

conjunction with the unlawful form only made matters worse, by creating confusion for Ms.

Pimentel.

106.    Lieutenant Jajuga's signature appears on the correct Statutory Rights and Consent

Form along with another unidentified and indecipherable signature.  *Compare* Exhibit 11,

Statutory Rights and Consent Form – Spanish at 2, *with* Exhibit 12, BATS Completion Record at

2.  The unidentified and indecipherable signature is the only signature (other than Ms.

Pimentel's) that appears on the unlawfully coercive Spanish advice of rights form.  Exhibit 5,

Methuen Police Dept. Booking Report at 4.

107.    Therefore, it is unclear at this time which Methuen Police Officer or Officers

presented Ms. Pimentel with the unlawfully coercive Spanish advice of rights form when she

signed it.  However, based on Officer Tardiff's police report and Lieutenant Jajuga's

breathalyzer testing report, Lieutenant Jajuga (who completed the booking process, advised Ms.

Pimentel of her rights, and performed the breathalyzer test), Officer Alarcon (who conducted the

15-minute observation of Ms. Pimentel with Lieutenant Jajuga immediately before the

breathalyzer test), and Officer Tardif (who described all of these events in his police report) were

all likely present and involved when Ms. Pimentel was asked to and did sign the unlawfully

coercive Spanish advice of rights form.  Exhibit 10, Police Report; Exhibit 12, BATS

Completion Record.  On information and belief, other as yet unidentified officers may have been

present as well.

108.    After obtaining Ms. Pimentel's signature on these forms, Lieutenant Jajuga

administered the breathalyzer to Ms. Pimentel.  After several failed attempts, Ms. Pimentel

provided a sufficient testing sample, showing a 0.25 BAC.

### *Criminal Proceedings Against Patricia Pimentel*

109.    On October 22, 2017, Ms. Pimentel was arraigned on charges of operating under

the influence of liquor and two counts of leaving the scene of an accident causing property

damage.  The Court appointed an attorney to represent Ms. Pimentel.

110.    After her arraignment, Ms. Pimentel met with her court-appointed attorney and

explained her immigration status and the events leading up to her arrest.

111.    The Methuen Police Department never disclosed to Ms. Pimentel or her attorney

that it was aware that the advice of rights form that the Methuen Police had presented to Ms.

Pimentel on the night of her arrest was erroneous and unlawful, despite having knowledge of this

fact since at least May 2013, after another defendant had filed a motion to suppress his breath

test results due to the Methuen Police Department's use of the unlawful Spanish language advice

of rights form.  *See supra* ¶¶ 50-54.

112.    Ms. Pimentel, who was obviously unfamiliar with the intricacies of Massachusetts

criminal practice, informed her attorney that a friend had resolved an OUI charge with a

continuance without a finding.  Ms. Pimentel asked her attorney to explain this procedure, if it

was available to her, and to explain how it might affect her immigration status.

31

113.    Ms. Pimentel's counsel informed her that criminal convictions "might" affect her immigration status, and "might" make her deportable.  He told Ms. Pimentel (incorrectly) that a continuance without a finding did not constitute an adjudication of guilt, and thus would preserve her DACA status.

114.    On the basis of her attorney's advice, Ms. Pimentel tendered a change of plea on January 6, 2015.  A judge in the District Court accepted Ms. Pimentel's admission to sufficient facts, and continued the matter for one year with a 210-day loss of her driver's license.  The District Court imposed several other conditions of probation, requiring Ms. Pimentel to enter and complete a fourteen-day inpatient treatment program and to undergo an evaluation pursuant to M.G.L. c. 90, § 24Q.  Near the end of her probation period, Ms. Pimentel's probation officer informed her that she was supposed to participate in a 16-week first-offender alcohol education program as well.  Ms. Pimentel did not remember that being part of her probation, but she signed up and began the program to avoid any trouble.  The District Court continued Ms. Pimentel's probation for four months so she could complete the program.

***Patricia Pimentel Loses Her DACA Status and Employment Authorization Due to the Plea Arrangement that Ms. Pimentel Agreed to on the Advice of Her First Attorney***

115.    On April 30, 2015, with the criminal case behind her, Ms. Pimentel applied to renew her DACA status and for employment authorization, which were set to expire on May 13, 2015.  Ms. Pimentel did not expect any problems to arise with her applications because her plea attorney had advised her that the continuance without a finding would not affect her DACA status or work authorization.

116.    On September 7, 2015, however, Ms. Pimentel received two letters from the United States Department of Homeland Security denying her applications to renew her DACA status and for employment authorization.  The letters informed Ms. Pimentel that her

applications were denied due to her conviction of "a felony or a significant misdemeanor." Exhibit 13, Letter from U.S.C.I.S. to P. Pimentel re: I-821 D, Deferred Action for Childhood Arrivals (9/7/2015); Exhibit 14, Letter from U.S.C.I.S. to P. Pimentel re: I-765, Application for Employment Authorization (9/7/2015).

117.    Only through the denial of her applications did Ms. Pimentel learn that her plea in the criminal case created such convictions for federal immigration purposes, which rendered her ineligible for the discretionary relief from removal that she had previously been granted. Still, at that point Ms. Pimentel had no reason to know that the Spanish language advice of rights form was erroneous. After all, her plea counsel did not identify it as an issue, nor did the prosecutor or the District Court judge. Ms. Pimentel had no reason to know that the Spanish advice of rights form was unlawfully coercive.

118.    What Ms. Pimentel did learn was that, as a result of her plea, she again became deportable and had to live under the imminent threat of removal to the Dominican Republic—a country where she had no family and which she had last seen when she left for the United States as a young child in 2003. Ms. Pimentel was devastated and lived in fear as a result of her now uncertain future in the United States.

### *Patricia Pimentel's Motion for New Trial is Granted Due to the Methuen Police Department's Use of the Unlawfully Coercive Spanish Advice of Rights Form*

119.    Ms. Pimentel then decided to consult a new criminal lawyer to see if anything could be done to help her address her immigration status. Ms. Pimentel hired undersigned counsel, Murat Erkan of Erkan & Associates, to serve as her new counsel.

120.    At some point after early December 2015, after consulting with Attorney Erkan, Ms. Pimentel learned that the Methuen Police Department's Spanish advice of rights form contained erroneous information. That was the first time Ms. Pimentel learned this. Among

33

other things, Ms. Pimentel learned that she had the right to refuse the breathalyzer and the jury would not know that she did so.  Ms. Pimentel also learned that the actual legal limit was lower than what the form said and the duration of the license suspension was actually longer than what the form said.  If Ms. Pimentel had known these things on the night of her arrest, she would not have felt forced to submit to the breathalyzer.

121.    On July 26, 2016, Attorney Erkan filed a motion for new trial arguing that Ms. Pimentel's plea was constitutionally invalid because her plea counsel did not properly advise her of the immigration consequences of her plea and failed to explore a motion to suppress the breathalyzer evidence on the grounds that it was unlawfully coerced and inadmissible in light of the erroneous Spanish language advice of rights form.

122.    A judge of the District Court allowed Ms. Pimentel's motion for new trial on March 2, 2017.  The judge ruled that Ms. Pimentel's plea counsel should have informed her that her status under DACA would be eliminated due to her admitting to sufficient facts in connection with the continuance without a finding and as a result she would not be immune from removal proceedings.  The judge also ruled that Ms. Pimentel did not voluntarily consent to the breathalyzer because the Spanish advice of rights form used by the Methuen Police "contained incorrect information concerning the length of a license suspension upon a refusal, the alcohol amount needed for no presumption of impairment and presumption of impairment, and the statement that the jury would be informed that the police had a duty to offer the test and that a defendant had the right to refuse the test."  Exhibit 4, Findings & Ruling re: Def.'s Mot. for New Trial at 4 (3/2/2017).  The judge concluded that plea counsel should have investigated this "defective rights form."  Id. at 5.

123.    The District Court judge concluded further that if Ms. Pimentel's breathalyzer results had been suppressed, "the strength of the government's case would have been diminished greatly." *Id.* at 5.  The judge reasoned that "[c]hallenging the results of field sobriety tests and police officers' observations may lead to a greater chance of acquittal than having to deal with a .25 blood alcohol content breathalyzer result." *Id.*  Therefore, Ms. Pimentel "demonstrated that her defense strategy would have been substantially different if the breathalyzer results were omitted." *Id.* at 6.

124.    On May 23, 2017, the Commonwealth agreed to dismiss one of the property damage charges and agreed to a new guilty-filed disposition for the OUI charge and the other property damage charge.  Notably, the Assistant District Attorney agreed not to (and did not) mention the breathalyzer results during his recitation of the facts given the unlawful Spanish language advice of rights form that the Methuen Police had given to Ms. Pimentel.  A District Court judge accepted the new plea arrangement that day.

125.    Despite ultimately resolving the criminal charges in a more immigration friendly manner, Ms. Pimentel suffered a great deal of harm throughout the process.  The harm to Ms. Pimentel includes, but is not limited to, the consequences of criminal prosecution, the attorney's fees required to challenge the use of the unlawful Spanish advice of rights form, the adverse impacts to her immigration status including attorney's fees required to address immigration matters, emotional pain and suffering, mental anguish, embarrassment, and humiliation.

### Class Action Allegations

126.    This action is properly maintained as a class action under Fed. R. Civ. P. 23(a) and 23(b)(1)-(3).

127.    Ms. Pimentel seeks to represent a certified Plaintiff class consisting of all Spanish-speaking Hispanic persons who have been arrested by the Methuen Police Department and prosecuted for OUI matters after receiving the unlawfully coercive Spanish advice of rights form (the "Class").  On behalf of the Class, Ms. Pimentel seeks declaratory and injunctive relief, followed by individual damages trials, attorneys' fees, and costs to remedy the harm done to them.  To be clear, Ms. Pimentel does not seek class-wide damages, but seeks individual damages trials after notice is provided to the Class Members and they are given an opportunity to challenge their convictions.

128.    On information and belief, the Class is so numerous that joinder of all members is impracticable.  While the exact number of Class Members is unknown to Ms. Pimentel at this time and can only be ascertained through appropriate discovery, the Essex County District Attorney's Office in response to a public records request identified over 860 total cases from the Methuen Police Department that included a charge of OUI under M.G.L. c. 90, § 24, since January 1, 2004.  *See* Exhibit 3, Letter from D. O'Sullivan to H. Cooper re: Response to Public Records Request at 1-2 (7/3/2017).  The District Attorney's Office enclosed with its July 3, 2017 letter a disc that identified all cases from the Methuen Police Department that included a charge of OUI under M.G.L. c. 90, § 24, since January 1, 2004.  That list included over 860 total cases.

129.    While that total number presumably includes individuals who did not receive the unlawful Spanish advice of rights form, it surely includes scores of individuals who did receive the unlawful Spanish form.  In fact, the Essex County District Attorney's Office identified approximately 300 defendants who it concluded had first or last names that could be Hispanic.  That is obviously an imperfect means to determine who actually received the form, not least of which because there may be Spanish-speaking Hispanic individuals without Hispanic sounding

names who received the form.  The Essex County District Attorney's Office has recognized that this method for approximating the number of potentially affected cases is flawed and has since committed to reviewing all OUI cases from Methuen in the Essex County District Attorney's Office's possession.

130.    Yet, these figures should come as no surprise given that Methuen is located next to Lawrence, Massachusetts, where Ms. Pimentel resides, and where the total population of 76,377 was comprised of 56,363 individuals (or 73.8%) who identified as Hispanic or Latino in the 2010 United States Census.  Exhibit 15, U.S. Census Bureau, American Fact Finder, Race & Hispanic or Latino Origin: 2010, Lawrence, Massachusetts.

131.    In short, the Class is so numerous that joinder of all members is impracticable.

132.    There are questions of law or fact common to the Class.  By way of example only, these common questions of fact and law include: when the erroneous Spanish language advice of rights form was created; who created that form; who approved its use; which Methuen Police Officers used that form and for how long; whether and when the Methuen Police Department became aware that the Spanish form was erroneous and what actions they took in response; and whether the erroneous Spanish language advice of rights form violates the state and federal constitution, statutes, and regulations.

133.    Ms. Pimentel's claims or defenses are typical of the claims or defenses of the Class.

134.    Ms. Pimentel has no interests that are adverse to or which irreconcilably conflict with the other members of the Class.

135.    Ms. Pimentel is represented by counsel experienced in class action litigation and, in particular, in litigating civil rights claims involving constitutional and statutory violations, tort

claims, and criminal OUI matters.  Ms. Pimentel's counsel has adequate resources to commit to representing the Class.

136.    Ms. Pimentel, therefore, will fairly and adequately protect the interests of the Class.

137.    This action is properly maintained as a class action under Fed. R. Civ. P. 23(b)(1) because prosecuting separate actions by or against individual class members would create a risk of: (a) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standard of conduct for the party opposing the class; or (b) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

138.    This action is also properly maintained as a class action under Fed. R. Civ. P. 23(b)(2) because the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

139.    This action is also properly maintained as a class action under Fed. R. Civ. P. 23(b)(3) because the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I
### Violation of 42 U.S.C § 1983 – Substantive Due Process
### (Plaintiff, individually and on behalf of all others similarly situated, Against All Defendants)

140.    Plaintiff incorporates all of the preceding allegations in this Complaint as if fully set forth here.

141.    At all relevant times, all Defendants were acting under color of State law.

142.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits deprivations of life, liberty, or property without fundamental fairness through governmental conduct that offends the community's sense of justice, decency, and fair play.  Substantive due process also prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.

143.    The Defendants in this action have adopted, implemented, enforced, condoned, sanctioned, acquiesced to, and encouraged a policy, pattern, practice, or custom of violating the clearly established due process rights of the Class Members by using the erroneous, misleading, and coercive Spanish language advice of rights form in arrests and prosecutions of Spanish-speaking Hispanic individuals for OUI matters in Methuen.

144.    The Methuen Police Department failed to train, supervise, monitor, or discipline its personnel adequately and to promulgate appropriate policies and procedures to prevent the use of the unlawfully coercive Spanish language advice of rights form in the arrests and prosecutions of Ms. Pimentel and the Class Members for OUI-related matters.

145.    The Methuen Police Department's conduct demonstrates its deliberate indifference to the violation of Ms. Pimentel's and the Class Members constitutional right to due process.

146.    The Methuen Police Department's conduct directly led to the repeated use of the unlawfully coercive Spanish language advice of rights form in arrests and prosecutions in Methuen.

147.    Officials at the City of Methuen and the Methuen Police Department, including but not limited to Chief Solomon, knew or should have known that the erroneous Spanish

language advice of rights form was unlawful and unconstitutional. Their encouragement, condonation, or acquiescence to the use of the erroneous form constitutes gross negligence amounting to deliberate indifference to the constitutional rights of the Class Members.

148.    Defendants Shawn Tardif, Elvin Alacron, James Jajuga, and John and Jane Does violated Ms. Pimentel's and the Class Members' constitutional right to due process by creating, approving, or using the unlawfully coercive Spanish advice of rights form in the arrests and prosecutions of Ms. Pimentel and the Class Members for OUI-related matters.

149.    As a direct and proximate result of the Defendants' violations of 42 U.S.C. § 1983, and as alleged in detail above, Ms. Pimentel and the Class Members have suffered harm.

150.    The acts of Defendants Joseph E. Solomon, Shawn Tardif, Elvin Alacron, James Jajuga, and John and Jane Does were intentional, wanton, malicious, reckless, callously indifferent, and oppressive, thus entitling Ms. Pimentel and the Class Members to punitive damages.

## COUNT II
### Violation of 42 U.S.C § 1983 – Procedural Due Process
### (Plaintiff, individually and on behalf of all others similarly situated, Against All Defendants)

151.    Plaintiff incorporates all of the preceding allegations in this Complaint as if fully set forth here.

152.    At all relevant times, all Defendants were acting under color of State law.

153.    The Due Process Clause of the Fourteenth Amendment to the United States Constitution prohibits deprivations of life, liberty, or property without constitutionally adequate procedural safeguards and protects the right to a fair trial.

154.    The Defendants in this action have adopted, implemented, enforced, condoned, sanctioned, acquiesced to, and encouraged a policy, pattern, practice, or custom of violating the

clearly established due process rights of the Class Members by using the erroneous, misleading, and coercive Spanish language advice of rights form in arrests and prosecutions of Spanish-speaking Hispanic individuals for OUI matters in Methuen.

155.    The Methuen Police Department failed to train, supervise, monitor, or discipline its personnel adequately and to promulgate appropriate policies and procedures to prevent the use of the unlawfully coercive Spanish language advice of rights form in the arrests and prosecutions of Ms. Pimentel and the Class Members for OUI-related matters.

156.    The Methuen Police Department's conduct demonstrates its deliberate indifference to the violation of Ms. Pimentel's and the Class Members constitutional right to due process.

157.    The Methuen Police Department's conduct directly led to the repeated use of the unlawfully coercive Spanish language advice of rights form in arrests and prosecutions in Methuen.

158.    Officials at the City of Methuen and the Methuen Police Department, including but not limited to Chief Solomon, knew or should have known that the erroneous Spanish language advice of rights form was unlawful and unconstitutional.  Their encouragement, condonation, or acquiescence to the use of the erroneous form constitutes gross negligence amounting to deliberate indifference to the constitutional rights of the Class Members.

159.    Defendants Shawn Tardif, Elvin Alacron, James Jajuga, and John and Jane Does violated Ms. Pimentel's and the Class Members' constitutional right to due process by creating, approving, or using the unlawfully coercive Spanish advice of rights form in the arrests and prosecutions of Ms. Pimentel and the Class Members for OUI-related matters.

160.     As a direct and proximate result of the Defendants' violations of 42 U.S.C. §

1983, and as alleged in detail above, Ms. Pimentel and the Class Members have suffered harm.

161.     The acts of Defendants Joseph E. Solomon, Shawn Tardif, Elvin Alacron, James

Jajuga, and John and Jane Does were intentional, wanton, malicious, reckless, callously

indifferent, and oppressive, thus entitling Ms. Pimentel and the Class Members to punitive

damages.

## COUNT III
### Violation of 42 U.S.C § 1983 – Equal Protection
**(Plaintiff, individually and on behalf of all others similarly situated,
Against All Defendants)**

162.     Plaintiff incorporates all of the preceding allegations in this Complaint as if fully

set forth here.

163.     At all relevant times, all Defendants were acting under color of State law.

164.     The Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution prohibits a State from denying to any person within its jurisdiction the equal

protection of the laws.

165.     As Spanish-speaking Hispanic persons, Ms. Pimentel and all of the Class

Members are members of a suspect class.  On information and belief, English-speaking and non-

Hispanic individuals have been treated differently than Spanish-speaking Hispanic individuals

arrested in Methuen for OUI-related matters insofar as the English-speaking and non-Hispanic

individuals have not received unlawfully coercive advice of rights forms.

166.     The Defendants in this action have, with discriminatory intent or purpose,

adopted, implemented, enforced, condoned, sanctioned, acquiesced to, and encouraged a policy,

pattern, practice, or custom of violating the clearly established equal protection rights of the

Class Members by using the erroneous, misleading, and coercive Spanish language advice of

42

rights form in arrests and prosecutions of Spanish-speaking Hispanic individuals for OUI matters in Methuen.

167.    The Methuen Police Department failed to train, supervise, monitor, or discipline its personnel adequately and to promulgate appropriate policies and procedures to prevent the use of the unlawfully coercive Spanish language advice of rights form in the arrests and prosecutions of Ms. Pimentel and the Class Members for OUI-related matters.

168.    The Methuen Police Department's conduct demonstrates its deliberate indifference to the violation of Ms. Pimentel's and the Class Members constitutional right to equal protection.

169.    The Methuen Police Department's conduct directly led to the repeated use of the unlawfully coercive Spanish language advice of rights form in arrests and prosecutions in Methuen.

170.    Officials at the City of Methuen and the Methuen Police Department, including but not limited to Chief Solomon, knew or should have known that the erroneous Spanish language advice of rights form was unlawful and unconstitutional.  Their encouragement, condonation, or acquiescence to the use of the erroneous form constitutes gross negligence amounting to deliberate indifference to the constitutional rights of the Class Members.

171.    Defendants Shawn Tardif, Elvin Alacron, James Jajuga, and John and Jane Does violated Ms. Pimentel's and the Class Members' constitutional right to equal protection of the laws by creating, approving, or using the unlawfully coercive Spanish advice of rights form in the arrests and prosecutions of Ms. Pimentel and the Class Members for OUI-related matters.

172.    As a direct and proximate result of the Defendants' violations of 42 U.S.C. § 1983, and as alleged in detail above, Ms. Pimentel and the Class Members have suffered harm.

173.    The acts of Defendants Joseph E. Solomon, Shawn Tardif, Elvin Alacron, James Jajuga, and John and Jane Does were intentional, wanton, malicious, reckless, callously indifferent, and oppressive, thus entitling Ms. Pimentel and the Class Members to punitive damages.

## COUNT IV
### Violation of 42 U.S.C. § 1981 & 42 U.S.C § 1983
### (Plaintiff, individually and on behalf of all others similarly situated, Against All Defendants)

174.    Plaintiff incorporates all of the preceding allegations in this Complaint as if fully set forth here.

175.    At all relevant times, all Defendants were acting under color of State law.

176.    42 U.S.C. § 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

177.    As Spanish-speaking Hispanic persons, Ms. Pimentel and all of the Class Members are members of a suspect class.  On information and belief, English-speaking and non-Hispanic individuals have been treated differently than Spanish-speaking Hispanic individuals arrested in Methuen for OUI-related matters insofar as the English-speaking and non-Hispanic individuals have not received unlawfully coercive advice of rights forms.

178.    The Defendants in this action have, with discriminatory intent or purpose, adopted, implemented, enforced, condoned, sanctioned, acquiesced to, and encouraged a policy, pattern, practice, or custom of violating the clearly established rights of the Class Members under

42 U.S.C § 1981 by using the erroneous, misleading, and coercive Spanish language advice of rights form in arrests and prosecutions of Spanish-speaking Hispanic individuals for OUI matters in Methuen.

179.    The Methuen Police Department failed to train, supervise, monitor, or discipline its personnel adequately and to promulgate appropriate policies and procedures to prevent the use of the unlawfully coercive Spanish language advice of rights form in the arrests and prosecutions of Ms. Pimentel and the Class Members for OUI-related matters.

180.    The Methuen Police Department's conduct demonstrates its deliberate indifference to the violation of Ms. Pimentel's and the Class Members rights under 42 U.S.C § 1981.

181.    The Methuen Police Department's conduct directly led to the repeated use of the unlawfully coercive Spanish language advice of rights form in arrests and prosecutions in Methuen.

182.    Officials at the City of Methuen and the Methuen Police Department, including but not limited to Chief Solomon, knew or should have known that the erroneous Spanish language advice of rights form was unlawful.  Their encouragement, condonation, or acquiescence to the use of the erroneous form constitutes gross negligence amounting to deliberate indifference to the Class Members' equal rights under the law.

183.    Defendants Shawn Tardif, Elvin Alacron, James Jajuga, and John and Jane Does violated Ms. Pimentel's and the Class Members' equal rights under the law by creating, approving, or using the unlawfully coercive Spanish advice of rights form in the arrests and prosecutions of Ms. Pimentel and the Class Members for OUI-related matters.

184.    As a direct and proximate result of the Defendants' violations of 42 U.S.C. §

1981, and as alleged in detail above, Ms. Pimentel and the Class Members have suffered harm.

185.    The acts of Defendants Joseph E. Solomon, Shawn Tardif, Elvin Alacron, James

Jajuga, and John and Jane Does were intentional, wanton, malicious, reckless, callously

indifferent, and oppressive, thus entitling Ms. Pimentel and the Class Members to punitive

damages.

**COUNT V**
**Violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d**
**(Plaintiff, individually and on behalf of all others similarly situated,**
**Against the City of Methuen)**

186.    Plaintiff incorporates all of the preceding allegations in this Complaint as if fully

set forth here.

187.    Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, provides: "No person

in the United States shall, on the ground of race, color, or national origin, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any program or

activity receiving Federal financial assistance."

188.    Defendant City of Methuen is a municipality in the Commonwealth of

Massachusetts.  On information and belief, the City of Methuen receives federal funding and

other financial assistance from the DOJ and other federal agencies.  As a recipient of federal

financial assistance, the City of Methuen is required to conduct its activities in a non-

discriminatory manner pursuant to Title VI of the Civil Rights Act of 1964.

189.    The Methuen Police Department is the law enforcement agency for the City of

Methuen.  On information and belief, the Methuen Police Department receives federal funding

and other financial assistance from the DOJ and other federal agencies.  As a recipient of federal

46

financial assistance, the Methuen Police Department is required to conduct its activities in a non-discriminatory manner pursuant to Title VI of the Civil Rights Act of 1964.

190.    The implementing regulations further provide that no program receiving financial assistance through the DOJ shall utilize criteria or methods of administration which have the effect of subjecting individuals to discrimination because of their race, color, or national origin, or have the effect of defeating or substantially impairing accomplishment of the objectives of the program as respects individuals of a particular race, color, or national origin. *See* 28 C.F.R. §§ 42.104.

191.    The City of Methuen's and the Methuen Police Department's use of the unlawfully coercive Spanish language advice of rights form in connection with arrests and prosecutions of Spanish-speaking Hispanic individuals for OUI matters in Methuen discriminates against individuals based on their race, color, or national origin as described in this Complaint. Defendants have acted with discriminatory intent or purpose in using the unlawfully coercive Spanish language advice of rights form as described in this complaint.

192.    The City of Methuen's and the Methuen Police Department's unlawful discrimination in violation of 42 U.S.C. § 2000d and its implementing regulations have caused and will continue to cause Ms. Pimentel and all Class Members harm.

**COUNT VI**
**Violation of the Massachusetts Civil Rights Act, M.G.L. c. 12, §§ 11H & 11I**
**(Plaintiff, individually and on behalf of all others similarly situated,**
**Against All Defendants)**

193.    Plaintiff incorporates all of the preceding allegations in this Complaint as if fully set forth here.

194.    The Defendants interfered by threats, intimidation, or coercion, or attempted to interfere by threats, intimidation, or coercion, with Ms. Pimentel's and all Class Members'

exercise or enjoyment of clearly established rights secured by the constitution or laws of the

United States or of rights secured by the constitution or laws of the Commonwealth, including

their procedural and substantive due process rights, their right to equal protection of the laws, the

prohibitions against discrimination in 42 U.S.C. § 1981 and Title VI of the Civil Rights Act of

1964, and the rights secured by M.G.L. c. 90, § 24, which requires valid consent to a breath test

before it is admissible in court.

195.    The Defendants' conduct also interfered with Ms. Pimentel's and all Class

Members' exercise or enjoyment of other clearly established Federal and State rights as alleged

in this Complaint.

196.    At all relevant times, Defendants Joseph E. Solomon, Shawn Tardif, Elvin

Alacron, James Jajuga, and John and Jane Does were acting within the scope of their

employment with the City of Methuen and/or the Methuen Police Department.

197.    As a direct and proximate result of the Defendants' violation of the Massachusetts

Civil Rights Act, Ms. Pimentel and all Class Members have suffered harm.

**COUNT VII**
**Violation of Substantive Due Process Guaranteed by the**
**Massachusetts Declaration of Rights**
**(Plaintiff, individually and on behalf of all others similarly situated,**
**Against All Defendants)**

198.    Plaintiff incorporates all of the preceding allegations in this Complaint as if fully

set forth here.

199.    Article 1 of the Massachusetts Declaration of Rights, as amended by Article 106

of the Amendments to the Constitution of the Commonwealth of Massachusetts, provides: "All

people are born free and equal and have certain natural, essential and unalienable rights; among

which may be reckoned the right of enjoying and defending their lives and liberties; . . . in fine, that of seeking and obtaining their safety and happiness."

200.    Article 10 of the Massachusetts Declaration of Rights provides: "Each individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property, according to standing laws."

201.    Article 12 of the Massachusetts Declaration of Rights provides that "no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land."

202.    Article 4 of Section 1 of Chapter 1 of Part the Second of the Constitution of the Commonwealth of Massachusetts provides that the General Court has power "to make, ordain, and establish, all manner of wholesome and reasonable orders, laws, statutes, and ordinances . . . so as the same be not repugnant or contrary to this constitution, as they shall judge to be for the good and welfare of this commonwealth, and for the government and ordering thereof, and of the subjects of the same . . . ."

203.    These provisions prohibit deprivations of life, liberty, or property without fundamental fairness through governmental conduct that offends the community's sense of justice, decency, and fair play.  Substantive due process also prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.

204.    The Defendants in this action have adopted, implemented, enforced, condoned, sanctioned, acquiesced to, and encouraged a policy, pattern, practice, or custom of violating the clearly established due process rights of the Class Members by using the erroneous, misleading,

and coercive Spanish language advice of rights form in arrests and prosecutions of Spanish-speaking Hispanic individuals for OUI matters in Methuen.

205.    As a direct and proximate result of the Defendants' violations of the Class Members due process rights, and as alleged in detail above, Ms. Pimentel and the Class Members have suffered harm.

## COUNT VIII
### Violation of Procedural Due Process Guaranteed by the
### Massachusetts Declaration of Rights
### (Plaintiff, individually and on behalf of all others similarly situated,
### Against All Defendants)

206.    Plaintiff incorporates all of the preceding allegations in this Complaint as if fully set forth here.

207.    Article 10 of the Massachusetts Declaration of Rights provides: "Each individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property, according to standing laws."

208.    Article 12 of the Massachusetts Declaration of Rights provides that "no subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled, or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land."

209.    These provisions prohibit deprivations of life, liberty, or property without constitutionally adequate procedural safeguards and protect the right to a fair trial.

210.    The Defendants in this action have adopted, implemented, enforced, condoned, sanctioned, acquiesced to, and encouraged a policy, pattern, practice, or custom of violating the clearly established due process rights of the Class Members by using the erroneous, misleading,

and coercive Spanish language advice of rights form in arrests and prosecutions of Spanish-speaking Hispanic individuals for OUI matters in Methuen.

211.    As a direct and proximate result of the Defendants' violations of the Class Members' due process rights, and as alleged in detail above, Ms. Pimentel and the Class Members have suffered harm.

**COUNT IX**
**Violation of Equal Protection Guaranteed by the**
**Massachusetts Declaration of Rights**
**(Plaintiff, individually and on behalf of all others similarly situated,**
**Against All Defendants)**

212.    Plaintiff incorporates all of the preceding allegations in this Complaint as if fully set forth here.

213.    Article 1 of the Massachusetts Declaration of Rights, as amended by Article 106 of the Amendments to the Constitution of the Commonwealth of Massachusetts, provides: "All people are born free and equal and have certain natural, essential and unalienable rights; among which may be reckoned the right of enjoying and defending their lives and liberties; that of acquiring, possessing and protecting property; in fine, that of seeking and obtaining their safety and happiness.  Equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin."

214.    These provisions prohibit denying any person the equal protection of the laws.

215.    As Spanish-speaking Hispanic persons, Ms. Pimentel and all of the Class Members are members of a suspect class.  On information and belief, English-speaking and non-Hispanic individuals have been treated differently than Spanish-speaking Hispanic individuals arrested in Methuen for OUI-related matters insofar as the English-speaking and non-Hispanic individuals have not received unlawfully coercive advice of rights forms.

216.     The Defendants in this action have, with discriminatory intent or purpose, adopted, implemented, enforced, condoned, sanctioned, acquiesced to, and encouraged a policy, pattern, practice, or custom of violating the clearly established equal protection rights of the Class Members by using the erroneous, misleading, and coercive Spanish language advice of rights form in arrests and prosecutions of Spanish-speaking Hispanic individuals for OUI matters in Methuen.

217.     As a direct and proximate result of the Defendants' violations of the Class Members' equal protection rights, and as alleged in detail above, Ms. Pimentel and the Class Members have suffered harm.

**COUNT X**
**Intentional Infliction of Emotional Distress**
**(Plaintiff, individually and on behalf of all others similarly situated,**
**Against Joseph E. Solomon in his individual capacity, Shawn Tardif, Elvin Alacron, James**
**Jajuga, and John and Jane Does)**

218.     Plaintiff incorporates all of the preceding allegations in this Complaint as if fully set forth here.

219.     Based on the acts alleged above, Defendants Joseph E. Solomon, Shawn Tardif, Elvin Alacron, James Jajuga, and John and Jane Does engaged in conduct intended to inflict emotional distress on Ms. Pimentel and all Class Members, or these Defendants knew or should have known that emotional distress was the likely result of their conduct.

220.     Defendants' actions were extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

221.     Defendants were acting within the scope of their employment.

222.     As a direct and proximate result of Defendants' wrongful conduct, and as alleged in detail above, Ms. Pimentel and the Class Members have suffered harm.

## COUNT XI
### Reservation of Right to Amend Complaint to Bring Tort Claims
### Under the Massachusetts Tort Claims Act
### (Plaintiff, individually and on behalf of all others similarly situated,
### Against the City of Methuen)

223.    Plaintiff incorporates all of the preceding allegations in this Complaint as if fully set forth here.

224.    The City of Methuen is a "public employer" within the meaning of M.G.L. c. 258, § 1. Ms. Pimentel on behalf of herself and all Class Members seeks recovery for the negligence of one or more "public employees" who were "acting within the scope of [their] office or employment" within the meaning of M.G.L. c. 258, §§ 1 and 2.

225.    Under the Massachusetts Tort Claims Act (MTCA), Ms. Pimentel on behalf of herself and all Class Members, on August 23, 2017 served a presentment letter on the appropriate executive officers of the City of Methuen and the Methuen Police Department and is awaiting a response or the expiration of the six-month period set forth in M.G.L. c. 258, § 4. Ms. Pimentel served the presentment letter within two years of her discovering her injuries and that the injuries were caused by the Defendants, all in compliance with M.G.L. c. 258, § 4.

226.    Plaintiff recognizes that the MTCA requires Plaintiff to wait to assert tort claims against the City in this action until the claims she presented on behalf of herself and all Class Members have been finally denied by the appropriate executive officers of the City of Methuen and the Methuen Police Department under M.G.L. c. 258, § 4.

227.    Plaintiff simply wishes to put the Defendants and the Court on notice of her intention to amend the Complaint to assert all tort claims set forth in her presentment letter if the City denies the claims set forth in that letter, which include the following claims on behalf of Ms. Pimentel and all those similarly situated: negligence; negligent hiring, supervision, training, and retention; and negligent infliction of emotional distress.

WHEREFORE, Plaintiff Patricia Pimentel, on behalf of herself and all others similarly situated, respectfully requests that the Court grant the following relief:

A.  Enter judgment declaring this action to be a class action under Fed. R. Civ. P. 23 and certifying Plaintiff Patricia Pimentel as the class representative and Plaintiff's counsel as Class counsel;

B.  Enter judgment in favor of Plaintiff and the Class, and against Defendants, on all counts of the Complaint;

C.  Enter judgment declaring that the erroneous Spanish language advice of rights form used by the Methuen Police Department rendered any consent involuntary because the form was inherently coercive and violated the Class Members' clearly established procedural and substantive due process rights, their right to equal protection of the laws, the prohibitions against discrimination in 42 U.S.C. § 1981 and Title VI of the Civil Rights Act of 1964, and the rights secured by M.G.L. c. 90, § 24;

D.  Enter an order appointing a special master to supervise the City of Methuen's implementation of a protocol under which all affected defendants are identified and adequate notice is provided to all affected defendants forthwith so that those defendants have an opportunity to move to vacate their plea or for a new trial;

E.  Order the City of Methuen to implement a protocol, with assistance from the Essex County District Attorney and to be supervised by a court-appointed special master, under which all affected defendants are identified and adequate notice of what happened and the affected defendants' rights is provided to all affected defendants forthwith so that those defendants have an opportunity to move to vacate their plea or for a new trial (*see, e.g.*, *Bridgeman v. District Attorney for Suffolk District*, 476 Mass. 298, 300-301, 326-332 (2017));

F.  Enjoin the Defendants from any further use of the unconstitutionally coercive Spanish advice of rights form;

G.  Order the City of Methuen to institute and implement improved policies and programs for training and supervising its personnel concerning the constitutional and statutory rights of individuals arrested for operating under the influence;

H.  Award to each Class Member, after individual damages trials to be conducted after notice is provided to the Class Members and they are given an opportunity to challenge their convictions, all damages in an amount, to be determined at trial, which is sufficient to compensate each Class Member for his or her injuries, including, but not limited to, the consequences of criminal prosecution, the attorney's fees required to challenge the use of the unlawful Spanish advice of rights form, the adverse impacts to their immigration status including attorney's

fees required to address immigration matters, emotional pain and suffering, mental anguish, embarrassment, and humiliation;

I.   Award to each Class Member, after individual damages trials to be conducted after notice is provided to the Class Members and they are given an opportunity to challenge their convictions, punitive or exemplary damages as permitted by law;

J.   Award to Plaintiff and the Class their attorneys' fees, costs, and interest as permitted by law; and

K.   Grant such further and other relief as may be just and proper.

**PLAINTIFF ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED DEMANDS A TRIAL BY JURY ON ALL CLAIMS AND ISSUES SO TRIABLE**

Respectfully submitted,

PATRICIA PIMENTEL, on behalf of herself
and all others similarly situated

By her attorneys,


*/s/ Howard M. Cooper*
Howard M. Cooper (BBO # 543842)
Joseph M. Cacace (BBO # 672298)
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
(617) 720-2626
hcooper@toddweld.com
jcacace@toddweld.com

Murat Erkan (BBO # 637507)
ERKAN & ASSOCIATES, LLC
300 High Street
Andover, MA 01810
(978) 474-0054
murat@erkanlaw.com

Dated:  October 5, 2017