UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
**PATRICIA PIMENTEL, on behalf of**     )
**herself and all others similarly situated;** )
                                        )
     **Plaintiff,**                           )   Civil Action No.
                                        )   17-11921-FDS
     v.                                )
                                        )
**CITY OF METHUEN, et al.,**            )
                                        )
     **Defendants.**                      )
and                                     )
                                        )
**JONATHAN W. BLODGETT, DISTRICT**      )
**ATTORNEY FOR ESSEX COUNTY, in**       )
**his official capacity,**              )
                                        )
     **Necessary Party.**                 )
_____)

# MEMORANDUM AND ORDER ON PLAINTIFF'S
# MOTION FOR CLASS CERTIFICATION

**SAYLOR, J.**

    This is a putative class action alleging civil rights violations due to the use of an incorrect Spanish-language advice-of-rights form by the Methuen Police.

    Plaintiff Patricia Pimentel was arrested for drunk driving on October 21, 2014. After she was arrested, she was given an advice-of-rights form in Spanish, her native language, which incorrectly stated her rights. Specifically, the form contained errors about the legal blood alcohol content level under Massachusetts law; the admissibility and significance of the results of a breathalyzer test; and the consequences of refusing such a test. She consented to a breathalyzer test and was prosecuted for operating under the influence of liquor ("OUI").

    Pimentel sued the City of Methuen and state officials under federal and Massachusetts

law, alleging multiple violations of her rights under the United States Constitution, federal and state civil rights acts, and state common law.

She has now moved to certify a class pursuant to Fed. R. Civ. P. 23. The putative class consists of "all Spanish-speaking Hispanic persons who have been arrested by the Methuen Police Department and prosecuted for OUI matters after receiving the unlawfully coercive Spanish advice of rights form." (First Am. Class Action Compl. (Dkt. No. 52) ("First Am. Compl.") ¶ 127). She seeks to certify a liability-only class, with individual damages trials to follow.

The City's use of an incorrect Spanish-speaking language form—indeed, using it for many years after the mistakes in it were first brought to the City's attention—is troublesome, to say the least. Nonetheless, the requirements of Rule 23 have not been satisfied, and class treatment of the claims is not appropriate. Accordingly, and for the reasons set forth below, the motion will be denied.

**I.    Background**

   **A.    Factual Background**

The facts are set out fully in this Court's prior Memorandum and Order on Defendants' Motion to Dismiss, *Pimentel v. City of Methuen*, 323 F. Supp. 3d 255, 262-66 (D. Mass. 2018).

   **B.    Procedural Background**

On October 5, 2017, Pimentel brought this action against the City of Methuen, Methuen Police Chief Joseph Solomon (in his individual and official capacities), Officers James Jajuga, Elvin Alacron, and Shawn Tardiff (in their individual capacities), and Jonathan Blodgett, the Essex County District Attorney (in his official capacity). The original complaint contained eleven counts. Defendants moved to dismiss the complaint for failure to state a claim and to dismiss all claims against the individual defendants on the basis of qualified immunity.

On June 26, 2018, the Court issued its memorandum and order on defendants' motion to dismiss, granting it in part and denying it in part. *See generally Pimentel*, 323 F. Supp. 3d 255.

On November 20, 2018, plaintiff filed an amended complaint. The amended complaint contains nine counts. Count 1 asserts a claim under 42 U.S.C. § 1983 for violations of Fourteenth Amendment substantive-due-process rights; Count 2 asserts a claim under 42 U.S.C. § 1983 for violations of Fourteenth Amendment equal-protection rights; Count 3 asserts a violation of 42 U.S.C. § 1981; Count 4 asserts a violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, by the City of Methuen; Count 5 asserts violation of the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, §§ 11H & 11I; Count 6 asserts a claim for intentional infliction of emotional distress against the individual police defendants; Count 7 asserts a claim for negligence by the City of Methuen; Count 8 asserts a claims for negligent supervision and training by the City of Methuen; and Count 9 asserts a claim for negligent infliction of emotional distress by the City of Methuen. (First Am. Compl. ¶¶ 140-212).[1]

The amended complaint also contains class action allegations. (*Id.* ¶¶ 126-139). Plaintiff "seeks to represent a certified Plaintiff class consisting of all Spanish-speaking Hispanic persons who have been arrested by the Methuen Police Department and prosecuted for OUI matters after receiving the unlawfully coercive Spanish advice of rights form." (*Id.* ¶ 127). She seeks a liability-only class, with damages to be determined individually for each plaintiff. (*Id.*).

On May 17, 2019, Pimentel filed the present motion to certify a class.

## II. <u>Legal Standard</u>

Under Rule 23, class certification is appropriate only if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the

---

[1] Apparently in error, the complaint also cites 42 U.S.C. § 1983 in the heading for Count 3.

class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

In addition, plaintiff must establish the elements for one of the types of class actions set out in Fed. R. Civ. P. 23(b). In this instance, all three of those types are relevant. Under Fed. R. Civ. P. 23(b), a class action may be maintained if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> >
> > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

For both Rule 23(a) and 23(b), plaintiff must establish each of the elements; failure to

establish any one will defeat class certification. *See Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir. 2003).

## III. Analysis

### A. Whether the Proposed Class Is Ascertainable

Before it turns to the Rule 23(a) and 23(b) analysis, the Court must assess whether the class is "ascertainable with reference to objective criteria." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 19 (1st Cir. 2015) (quoting 1 William B. Rubenstein, *Newberg on Class Actions*, §§ 3:1, 3:3 (5th ed. 2013)); *see also Matamoros v. Starbucks Corp.*, 699 F.3d 129, 139 (1st Cir. 2012). For the class to be ascertainable, its members must be determinable by "stable and objective factors" that enable a court to "decide and declare who will receive notice, who will share in any recovery, and who will be bound by the judgment." *Kent v. SunAmerica Life Ins. Co.*, 190 F.R.D. 271, 278 (D. Mass. 2000).

The proposed class is ascertainable. Plaintiff asks to certify a class "consisting of all Spanish-speaking Hispanic persons who have been arrested by the Methuen Police Department and prosecuted for OUI matters after receiving the unlawfully coercive Spanish advice of rights form." (First Am. Compl. ¶ 127). That definition thus identifies class members by whether (1) they speak Spanish, (2) identify as Hispanic, (3) were arrested by defendants, (4) received the form at issue, and (5) were then prosecuted for an OUI. Those are objective criteria sufficient to identify the members of the proposed class.[2]

One adjustment is required, however. The proposed class definition characterizes the form at issue as "unlawfully coercive." That is a legal conclusion, and conditioning membership

---

[2] Defendants do not dispute that class members' Hispanic ethnic identity is a valid objective factor. However, it appears that, at least thus far, plaintiff has determined whether potential class members are Hispanic based on their first or last names. (*See* Pl. Mem., Ex. B at 10). The reliability of that approach is questionable. *See Larragoite v. Heitman Props. of N.M., LLC*, 2000 WL 36739574, at *2 (D.N.M. Sep. 15, 2000).

5

in the class on such criteria creates a "'fail-safe class'—a class defined in terms of the legal injury." *In re Nexium*, 777 F.3d at 22. "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012); *see id.*

That flaw in the class definition is easily remedied here. The other, objective criteria make the class sufficiently ascertainable, and plaintiff herself admits that the term "unlawfully coercive" is "simply a descriptive phase" that may be left out of her proposed definition. (Pl. Reply at 2). "A court may, in an exercise of its discretion, revise a proposed class definition to avoid the problem of a fail-safe class." *Campbell v. First Am. Title Ins. Co.*, 269 F.R.D. 68, 74 (D. Me. 2010). Accordingly, the Court will omit the phrase "unlawfully coercive", and it concludes that—with that modification—the proposed class is ascertainable.

### B. Whether the Proposed Class Satisfies Rule 23(a)

#### 1. Whether the Class Is So Numerous that Joinder Is Impracticable

Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is a "low threshold for numerosity." *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Id.* (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)); *see also In re Relafen Antitrust Litig.*, 218 F.R.D. 337, 342 (D. Mass. 2003). In addition to raw numbers, there are also several subjective factors to consider, such as "the geographic location of proposed class members, the nature of the action, and matters of judicial economy. . ." *In re Nexium (Esomeprazole) Antitrust Litig.*, 296 F.R.D. 47, 52 (D. Mass. 2013).

Thus far, plaintiff has identified fewer than 40 putative class members. Plaintiff has reviewed data provided by the Methuen Police Department and the Essex County District Attorney's Office. She has identified 30 individuals whom she says received the erroneous form since January 1, 2011. (July 23, 2019 Hr'g Tr. at 13:19-14:3).[3] That tally underestimates the true size of the class, she says, because defendants have used the form since 1994. (Pl. Mem. at 5).

Defendants dispute that estimate. They contend that it is composed almost entirely of uninjured persons. Specifically, they contend that for all but two of the thirty members identified by plaintiff, either the record is a duplicate entry, or the person received a properly translated form, did not take a breathalyzer test, or was never prosecuted. (*See* Breen Aff. at Ex. 1). As discussed below, it is indeed doubtful whether an arrestee who merely received the erroneous form, and did not take a breathalyzer test, has suffered an injury. But even if defendants are correct, the only factual support for their claim that 28 of the 30 putative class members were not injured is an analysis produced by their counsel, unaccompanied by documentary support. (*See id.* at Ex. 1).

For present purposes, plaintiff need only provide a reasonable estimate of the number of class members; she is "not required to provide 'evidence of exact class size of identity of class members to satisfy the numerosity requirement.'" *Brown v. City of Barre*, 2010 WL 5141783 (D. Vt. Dec. 13, 2010) (quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)); *see also* 5 William B. Rubenstein, *Newberg on Class Actions* § 3:13 (5th ed.) (Westlaw 2019). Her estimate of 30 appears reasonable. She calculated it based on defendants' records and reasonable

---

[3] Plaintiff had previously identified 34 putative class members, (Basaria Aff. ¶ 16), but she has since conceded that four of them were based on duplicate entries in the data. (July 23, 2019 Hr'g Tr. at 13:19-14:13).

inferences drawn from them. (*See generally* Basaria Aff.). While it may include some plaintiffs who were not injured, to some extent that is inevitable. *See In re Nexium*, 777 F.3d at 22. In any event, defendants have not clearly shown that a substantial portion of the putative class was *not* injured.

Of course, plaintiff's estimate of 30 class members still falls well short of the 40-person threshold. She concedes that fact, and contends that several subjective factors nevertheless make joinder impracticable. (Pl. Mem. at 8-9). Defendants reply that none of those factors apply. Because plaintiff's proposed class fails for other reasons, the Court will not resolve the question of whether numerosity has been established.

### 2. Whether There Are Common Questions of Law or Fact

Rule 23(a) further requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires "the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotations omitted). "This does not mean merely that they have all suffered a violation of the same provision of law." *Id.* "Their claims must depend upon a common contention" and the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* That is, commonality depends not on whether there are common questions, but "common *answers*." *Id.*[4]

Plaintiff contends that the putative class members have suffered the same injury: the

---

[4] As set forth below, individual issues overwhelm the common issue in this matter, making class certification inappropriate. There is some doubt whether that issue is best addressed under the commonality requirement of Rule 23(a)(2) or the predominance requirement of Rule 23(b)(3). It appears that the more appropriate course here is the former, because "answering the plaintiff's suggested question"—that is, whether use of the form injured class members—"requires individualized determinations . . ." *See Parent/Professional Advocacy League v. City of Springfield*, 934 F.3d 13, 28-33 (1st Cir. 2019). In this case, however, it is immaterial, as plaintiffs seek certification under Rule 23(b)(3), and certification under either Rule 23(b)(1) or Rule 23(b)(2) is inappropriate.

receipt of the erroneous form, which deprived them of their ability to provide "informed consent" to a breathalyzer test. (Pl. Reply at 3). *See* Mass. Gen. Laws ch. 90, § 24(1)(e); 501 C.M.R. 2.13(2); *Commonwealth v. Carson*, 72 Mass. App. Ct. 368, 370-71 (2008). That injury, plaintiff says, occurred at the moment that class members received the erroneous form; any variations in resulting criminal proceedings or penalties only affect individualized damages. *See In re Deepwater Horizon*, 739 F.3d 790, 810-11 (5th Cir. 2014) (holding that class members can suffer a common injury "even when the resulting injurious effects—the damages—are diverse").

It is not disputed that the form was erroneous, and that it contained a variety of misrepresentations. However, mere receipt of the form is not, by itself, a cognizable injury. Such an injury requires, at the very least, that an arrestee relied on one or more of those misrepresentations to his or her detriment. And that requirement raises factual questions that cannot be resolved on a class-wide basis.

To begin, Massachusetts law requires only an OUI arrestee's "actual consent"—not informed consent—to a breathalyzer test. *Carson*, 72 Mass. App. Ct. at 370-71. "The consent required is not the 'knowing, voluntary and intelligent' consent required for waiver of constitutional rights, but the consent of customary usage indicated by criteria such as verbal agreement to undergo, lack of objection to, or cooperation in the performance of, the blood testing." *Id.* Neither the statute nor its implementing regulations require any specific warning to be given before securing consent or require the use of a particular consent form. *See* Mass. Gen. Laws ch. 90, § 24(1)(e); 501 C.M.R. 2.13(2). Thus, whether the use of the erroneous form vitiated any putative class members' consent depends on the factual circumstances of each particular case. *See Carson*, 72 Mass. App. Ct. at 371.[5]

---

[5] The District Attorney's office contends that "it is unclear whether, as a matter of Massachusetts law, use of the incorrect advisory form vitiates the 'consent'" to take breathalyzer tests. (District Attorney's Amicus Br. at

Second, in order for the erroneous form to have had any effect on any class member, she must have read it, or had it read to her. Whether that happened is clearly an individualized inquiry. Indeed, plaintiff's own case illustrates the point. She received the form, but was "so drunk that [she] sort of looked at it generally." (Breen Aff., Ex. 2 ("Pimentel Dep.") at 53:15-16). An officer read the form out loud to her in Spanish, but only part of it. (*Id.* at 54:1-8). Minutes later, plaintiff received a different form, in English, that correctly stated her rights concerning breathalyzer tests. (*See* Am. Compl. ¶ 105). She alleges that "the use of the correct form in conjunction with the unlawful form only made matters worse [] by creating confusion for [her]." (*Id.*). Whether true or not, it is unlikely that all arrestees received the same two forms in the same fashion.[6]

Third, even assuming that a particular plaintiff read the form, or had it read to her, she must have relied upon it in some way. Put another way, the misleading information on the form must have caused her to act (or not act) in some particular way as a result. But it is highly unlikely that all class members relied upon the form in the same way, or that they all took the same course of action. That, in turn, affects whether all class members suffered the same type of injury, or indeed any injury at all. For example, some arrestees may have refused to take a breathalyzer test. For those who refused, it is hard to see how the erroneous form injured them. The form's errors seem likely to induce an OUI arrestee to *consent* to the test, not to refuse it. The form overstated the limit for blood alcohol content (that is, the breathalyzer was easier to

---

6). Nevertheless, it has elected to proceed as if the use of the erroneous consent form does vitiate consent because "the basic unfairness of any consent obtained through its use is manifest." (*Id.*).

[6] In addition, it appears that plaintiff may have already known that the blood alcohol level for intoxication was 0.08, not 0.10 as the form incorrectly stated. (*Compare* Pimentel Dep. at 56:14-16 (plaintiff knew it was 0.08 at time of her arrest) *with id.* at 58:13-19 (plaintiff had previously learned it was 0.08 but did not remember that at the time of her arrest)).

10

"pass") and falsely stated that a jury would be informed of the arrestee's refusal to take a breathalyzer.

Even if the erroneous form did lead a class member to refuse a breathalyzer, that refusal may have been harmless. A class member may not have been prosecuted at all. And if a class member was convicted, it was surely not because of her refusal to take the breathalyzer test; under Massachusetts law, any such refusal is not admissible evidence in court. *See* Mass. Gen. Laws ch. 90 § 24(1)(e). However, a class member may have suffered an injury due to her refusal of a breathalyzer if (1) it led her to plead guilty to an OUI because the form erroneously said that her refusal would be admissible at trial, or (2) her refusal was used in an action to suspend her driver's license, *see* Mass. Gen. Laws. ch. 90 §§ 24(1)(e), 24N. Thus, whether a class member suffered a cognizable injury likely depends on whether she took a breathalyzer test and, if she refused, what consequences, if any, resulted from that refusal.

Under the circumstances, there are not common factual issues sufficient to support class certification. Whether any member of the class can recover will turn on specific facts, such as (1) if and how the form was presented to a class member; (2) whether she reviewed and understood it; (3) whether she also received and reviewed a correct version of the form; (4) whether she took a breathalyzer test; and (5) what consequences, if any, she suffered for refusing a breathalyzer test. Because those issues are not likely to be common to all class members, plaintiff has not carried her burden to establish commonality under Rule 23(a).[7]

### 3. **Whether Plaintiff's Claims Are Typical of the Class**

Rule 23(a) also requires that "the claims or defenses of the representative parties are

---

[7] Again, in any event, even if the commonality requirement is satisfied, individual issues of causation and injury would clearly predominate within the meaning of Rule 23(b)(3).

typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "To meet the typicality prerequisite, the injuries of the named plaintiff must arise from the same events or course of conduct and be based upon the same legal theory as the injuries and claims of the class." *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 325 F.R.D. 529, 536 (D. Mass. 2017).

Here, plaintiff's injury arises from different events than those of other class members. As discussed, putative class members did not suffer a common injury at the moment they received the erroneous form. Rather, whether they were injured depends on additional facts that likely vary between class members. The same factual differences that precluded commonality between class members also make plaintiff's claim atypical. *See Dukes*, 564 U.S. at 349 n.5 (explaining that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge" because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical" and class members' claims are sufficiently "interrelated").

For example, it is unclear whether plaintiff read and understood the erroneous form, while other class members may have clearly relied upon it. Plaintiff says she was confused by the additional, correct form, which may not have been provided to other class members, or may have superseded the erroneous form in the eyes of other class members. And it is disputed whether plaintiff already knew the blood alcohol content level for intoxication was 0.08, while other class members may have relied exclusively on the erroneous statement in the form that the level was 0.10. In light of those factual differences, plaintiff's claim is not sufficiently typical of other class members' claims, and the typicality requirement is not satisfied. *See Schonton v. MPA Granada Highlands LLC*, 2019 WL 1455197, at *8 (D. Mass. Apr. 2, 2019).

#### 4. **Whether Plaintiff Will Fairly and Adequately Represent the Interests of the Class**

Finally, plaintiff must show under Rule 23(a)(4) that she will "fairly and adequately protect the interests of the class." There are two elements to the adequacy requirement: "The moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985).

Plaintiff contends that she is the ideal class representative and has retained experienced counsel. Defendants do not dispute that plaintiff and her counsel will fairly and adequately represent the class. Thus, plaintiff has carried her burden to establish the adequacy element of Rule 23(a).

### C. **Whether the Proposed Class Satisfies Rule 23(b)**

Because plaintiff has failed to satisfy the requirements of Rule 23(a), her motion for class certification will be denied. Nevertheless, the Court will briefly explain why she has also failed to meet the requirements of Rule 23(b).

#### 1. **Rule 23(b)(1)**

Rule 23(b)(1) allows class certification when "prosecuting separate actions by or against individual class members would create a risk of" either "(A) inconsistent or varying adjudications . . . that would establish incompatible standards of conduct" for a defendant; or "(B) adjudications with respect to individual class members that . . . would be dispositive of the interests of other members not parties to the individual adjudications . . . ." Fed. R. Civ. P. 23(b)(1). Plaintiff contends that class certification is appropriate under Rule 23(b)(1)(A) because there is a risk of inconsistent or varying adjudications that could establish incompatible standards

of conduct for defendants. The amended complaint seeks a declaration that the erroneous form vitiated any class member's consent to a breathalyzer test; an injunction requiring the City to notify all affected defendants and forbidding further use of the form; and individualized money damages. (First Am. Compl. at 51).

It is doubtful that Rule 23(b)(1) certification is available in actions that seek monetary relief. The Supreme Court has previously suggested that there are due process concerns with Rule 23(b)(1) class suits seeking money damages. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). More recently, in *Dukes v. Walmart*, it held that "individualized monetary claims belong in Rule 23(b)(3)" because of the procedural protections that attend Rule 23(b)(3) certification. *See* 564 U.S. at 362-63. It is true that *Dukes* "was literally about a [Rule] 23(b)(2) class action," and therefore the statements about Rule 23(b)(1) are formally *dicta*. *See* 2 William B. Rubenstein, *Newberg on Class Actions* § 4:14 (5th ed.). However, the "decision strongly suggests that monetary damages will rarely, if ever, be available in any non-opt-out class action, including those brought under 23(b)(1)." *Id.* at § 4:2.

Furthermore, it is unlikely that separate actions would subject defendants to incompatible standards of conduct. Plaintiff has yet to identify any other class member who is likely to sue, and she acknowledges that the erroneous form is no longer in use. (Pl. Mem. at 4). Even if plaintiff and another putative class member both sued defendants, they would likely seek the same equitable relief: to prevent the use of the erroneous form, which defendants have already abandoned, and to notify affected defendants. Thus, even if plaintiff and the other member prevailed, there would be no risk that defendants "might be forced to violate a judgment made in one court in order to satisfy a judgment imposed by another court." *Kent*, 190 F.R.D. at 280. That is especially true because "there is no suggestion that some perverse plaintiff might sue

14

(though none has) to compel *less* disclosure than defendant[s] [are] now supplying." *See Ratner v. Chem. Bank N.Y. Tr. Co.*, 54 F.R.D. 412, 415 (S.D.N.Y. 1972). Plaintiff contends there is a possibility that the two courts could subject defendants to incompatible standards of conduct by ordering them to notify affected members and remedy their criminal convictions by different methods, but that risk is too small to justify class certification here.

For those reasons, certification under Rule 23(b)(1) is unwarranted.

### 2. **Rule 23(b)(2)**

"Rule 23(b)(2) allows class treatment when 'the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Dukes*, 564 U.S. at 360 (quoting Fed. R. Civ. P. 23(b)(2)).

Rule 23(b)(2) does not apply here because plaintiff seeks individualized money damages. *See Dukes*, 564 U.S. at 360-61 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class . . . . it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.").

Plaintiff contends that her proposed class may be certified as a "hybrid" or "dual" class action, in which the court certifies "*both* a (b)(2) class for the portion of the case concerning injunctive and declaratory relief *and* a (b)(3) class for the portion of the case requesting monetary damages." *See* 2 William B. Rubenstein, *Newberg on Class Actions*, § 4:38 (5th ed.) (Westlaw 2019). But, as explained below, certification of a Rule 23(b)(3) class is also inappropriate.[8]

---

[8] Plaintiff also suggests that the court "may 'bifurcate the litigation into liability and damages phases . . . using issue certification under Rule 23(c)(4)." (Pl. Reply at 14 (quoting 2 William B. Rubenstein,

15

### 3. Rule 23(b)(3)

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) has two elements: predominance and superiority.

#### a. Predominance

"The aim of the predominance inquiry is to test whether any dissimilarity among the claims of class members can be dealt with in a manner that is not inefficient or unfair." *In re Asacol Antitrust Litig.*, 907 F.3d 42, 51 (1st Cir. 2018) (internal quotation marks and citation omitted). The question is whether "a sufficient constellation of common issues binds class members together. . ." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000). "'[T]he predominance criterion is far more demanding,' however, than the commonality requirement." *In re New Motor Vehicles Can. Exp. Antitrust Litig.*, 522 F.3d 6, 20 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997)).

Here, there is not a "sufficient constellation" of common issues between class members. As discussed at length above, the resolution of each class member's claim will depend on individualized issues, such as whether each person read and relied upon the erroneous form, whether each person received a correct form and what was its effect, and whether each person refused a breathalyzer and what were the consequences. Those dissimilarities cannot be dealt with efficiently; each class member's claim would require its own evidence at trial about the circumstances under which she received the form.

---

*Newberg on Class Actions*, § 4:38 (5th ed.) (Westlaw 2019)). She fails, however, to provide any reason why Rule 23(c)(4) certification is warranted here.

### b. Superiority

"Finally, a Rule 23(b)(3) class should only be certified where 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Garcia v. E.J. Amusements of N.H., Inc.*, 98 F. Supp. 3d 277, 292 (D. Mass. 2015) (quoting Fed. R. Civ. P. 23(b)(3)). Plaintiff has not established that the superiority requirement has been met. Because defendants' liability to each plaintiff will turn on individualized questions of fact, a class action will not achieve the "economies of time, effort, and expense" or "uniformity of decision" that ordinarily justify the device. *See Amchem Prods., Inc.*, 521 U.S. at 615.

## IV. Conclusion

For the foregoing reasons, plaintiff's motion to certify a class is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor, IV
F. Dennis Saylor, IV
Dated: December 9, 2019                    United States District Judge